2004 WY 60

**JRS, Appellant (Plaintiff/Petitioner),**

v.

**GMS, Appellee (Defendant/Respondent).**

**No. 03–111.**

Supreme Court of Wyoming.

May 26, 2004.

Representing Appellant: Christopher M. Wages of Goddard, Wages & Vogel, Buffalo, WY.

Representing Appellee: GMS, Pro se.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶1] Appellant, JRS (Father), seeks review of an order of the district court denying

his petition to modify a divorce decree so as to grant him primary custody of all four of his minor children. Appellee, GMS (Mother), did not file a brief in this appeal. In the district court proceedings she also filed a petition seeking custody of all four children. The district court found that neither party had demonstrated a material change of circumstances and maintained the status quo, continuing the parties' original stipulation that Father would have custody of the two older children, and Mother would have custody of the two younger children. We will reverse and remand for additional proceedings.

## ISSUE

[¶ 2] Father poses this issue for our consideration:

Whether the district court erred when it found that there was no substantial and material change of circumstances as required by law to modify the *Stipulated Decree of Divorce* and denied [Father's] *Petition for Modification of Decree of Divorce.*

## FACTS AND PROCEEDINGS

[¶ 3] The district court entered its stipulated decree of divorce on October 5, 2000. Custody of the parties' four children was established in the stipulation. Father was awarded custody of the parties' two older children, born May 9, 1990, and February 15, 1992. Mother was awarded custody of the parties' two younger children, born January 9, 1995, and May 1, 1997. Visitation rights were detailed in the decree. The decree included a section devoted to "PARENTAL COOPERATION PROVISIONS:"

Each parent shall:

a. Exercise discretion and cooperate with each other in exercising custodial and visitation rights so the best interest of the children is served.

b. Make every reasonable effort to insure that the children have free access to and unhampered contact with both parents.

c. Encourage the free and natural development of the children's love and respect for both parents and do nothing which may estrange the children from the other parent, or injure the opinion of the children as to the other parent.

d. Keep each other informed as to the location and phone number of the children at all times.

e. Promptly notify the other of any illness, accident or other circumstance seriously affecting the health or welfare of the children. Both parents shall have unlimited visitation privileges, consistent with the circumstances, for so long as the emergency situation continues.

f. Be entitled to complete information from any physician, dentist, psychologist or other specialist attending to the children for any reason whatsoever and shall be entitled to copies of any reports rendered by any such specialist. Neither parent shall do anything to frustrate the other parent's access to any health care records relating to the children.

g. Be entitled to complete detailed information from any teacher, school or college and shall be entitled to copies of all reports or records with respect to the children's education.

h. Consult with each other with respect to all matters of major importance affecting the welfare of the children.

[¶ 4] Initially, there were no difficulties with visitation because both parents continued to reside in Crook County. Not long after the divorce, Mother moved from Crook County to Belle Fourche, South Dakota. Father testified that Mother became uncooperative in allowing visitation. In addition, after the divorce, Father was convicted of battery on his former wife, and traveling to South Dakota was difficult for him because he had to get permission from his probation officer to leave Wyoming and go into another state. Mother would not agree to bring the children to, and pick them up from, the border. Mother denied parts of these assertions. The record reflects that neither parent had a very good specific memory, nor any meaningful records, so as to clarify what visitation had or had not occurred.

[¶ 5] On July 8, 2002, Father filed a petition to modify the divorce decree [1] so as to give him primary custody of all four children. He asserted that there had been a material change of circumstances and that it was in the best interests of the children to be in his primary custody. Wyo. Stat. Ann § 20-2-204(c) (LexisNexis 2003) provides:

(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a).[2] In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances.

On that same date, Father also filed a motion for a temporary restraining order, seeking protection for the children in Mother's custody. That motion was premised on allegations that the parties' youngest daughter had been sexually molested by both Mother's fiancé and her brother. The district court issued a temporary restraining order on July 10, 2002. From that date forward, Mother did not have custody of any of the children, and her visits with the children have been supervised. On September 24, 2002, the district court continued the temporary restraining order pending further information being provided to the court.

[¶ 6] On December 27, 2002, Mother filed an answer to Father's amended petition for modification of the custody arrangements, and in that document also asked that custody be modified to award her custody of all four children.

[¶ 7] In January of 2003, all four children were removed from Father's home when substantiated allegations of child abuse were leveled against Father's new wife (Stepmother). Although Father was not accused of inflicting any abuse on his children, he was found to have failed to protect his children from Stepmother. Father complied with the case plan put into effect by DFS and eventually he regained custody of all four children. Stepmother is not permitted to have any contact with the children, but Father continues to be married to her and has maintained a relationship with her. In light of all these circumstances, a DFS professional who managed the child abuse case testified that placing the children in Mother's full-time care and control would not be in the best interests of the children and that the children expressed a preference to be with Father. Her observations were that the relationship between Mother and the children was strained, and that the children preferred to live with Father. It is a condition of the DFS case plan that Stepmother not be allowed near the

---

**1.** The district court later allowed Father to amend his petition.

**2.** Wyo. Stat. Ann. § 20-2-201(a) provides:

(a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14-4-401 through 14-2-907, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

children, and Father testified that he would honor that condition.

[¶ 8] A guardian ad litem[3] (GAL) was appointed to represent the children. In a report received by the district court the day before trial on these matters began, the GAL summarized his investigation and offered some concrete suggestions to the district court:

Impressions

While all information received was dutifully weighed in preparing my report, I found the comments of and observations of Pam Andrews at CASA, the thoughts and observations of [RS—Father's brother] and the more candid comments of [Father] to be of particular importance in forming my impressions in this matter. If this were a case of first impression with neither party having significant others in their lives complicating their current situations, I would be inclined to say that [Father] is the better parent. But even then, I share [RS's] concern that given the number of children, their age's and [Father's] work schedule, for him to have primary custody of all the children could present problems. More importantly, this is not a case of first impression. The parties both have significant others, who to one extent or another continue to be a part of their lives, which cause me great concern.

I have no problem in concluding that [Stepmother] should be no where near the parties' children now or in the foreseeable future. Unfortunately, this is easier said than done as [stepmother] appears to continue to be lurking in the shadows of [Father's] life and as I do not feel comfortable that [Father] is anywhere close to choosing his children's welfare over the presence and opinions of [stepmother]. While less is known about [BB—Mother's fiancé] and his interactions with the parties' children, I likewise feel, despite [Mother's] claims to the contrary, [BB] continues to be a significant part of [Mother's] life. Though the allegations of sexual impropriety initially leveled against [BB] may be inconclusive enough to prevent the filing of criminal charges, nevertheless I cannot completely ignore this concern. Further, I find [RS's] observations of [BB] as having a quick temper and the admitted use of a cheese board to spank the parties' youngest child as indications that [BB] is not a positive aspect of the children's lives.

I find no easy or good solution to this case. Neither parent before or since their divorce presents a picture of the other that does not raise with me concerns regarding the safety and well being of their children. The parties originally chose, whatever the circumstances may have been, to enter into a split custody arrangement regarding their children. With the notable exception of the problems involving weekend visitation, until the appearance of the parties' respective significant others this arrangement seemed to be working relatively well. Again, in stating this impression I rely on the comments and observations of [RS] as well as the comments of the parties themselves. [Father] has expressed a concern regarding [Mother's] drinking both predating and since the parties' divorce, though he admits that he only has random comments of the parties' children since their divorce to support these concerns. [Mother] has denied drinking is a problem in her life or that she drinks around the children. As [Mother] has volunteered she has no need to have alcohol in her home, and as there should be no circumstance where she would feel compelled to drink in the presence of the children, erring a little on the safe side, I would recommend that there be no alcohol in the home of [Mother] at any time and that she not consume or have alcohol still present in her system at any time that the children are with her.

My final impression as a matter of fact and law is that if we were able to consider the parties to this case without consideration of their significant others the change of circumstances in their lives would be insufficient to support a change one way or the other concerning primary custody of the parties' children.

*Conclusion*

---

3. The GAL is not a participant in this appeal.

In conclusion, I would recommend the following:

1. That the split custody of the parties' children as set forth in the parties' Divorce Decree remain in place.

2. That the exchange of the children for all visitation take place at a neutral location in Moorcroft, which is approximately half way between the parties' present locations. Any party refusing to cooperate or otherwise put their best efforts forward in insuring that visitation exchanges take place as order[ed] should be held in contempt of court and held responsible for the other party['s] cost, including reasonable attorney fees, in bringing any action to enforce such visitation exchanges. Feeble excuses as to why an exchange did not take place should not be tolerated given the history of the problem regarding exchanges and the desire of the children to spend as much time as possible in each others company.

3. [Stepmother] shall have no contact direct or indirect at any time with the children of the parties.

4. [BB] should have no contact direct or indirect at any time with the parties' children.

5. [TB—Mother's brother] should have no contact direct or indirect at any time with the parties' children.

6. That [Mother] shall not use or consume alcohol at any time any of her children are in her presence. Further, that [Mother] shall at no time have alcohol in her residence.

7. Each party shall be responsible for their own attorney fees in this matter and for paying their share of the Guardian Ad Litem fees as may be approved and directed by the court.

8. That any order coming out of the Sheridan County Juvenile Court pending juvenile action directed towards the parties should constitute additional conditions to this court's order while the Sheridan County matter remains open.

9. The parties should continue with and complete the parenting classes they are enrolled in, including any follow up recommendations that may come from this program.

[¶ 9] The district court made oral findings to the effect that neither party had met the burden of demonstrating a material change of circumstances that justified altering the district court's original decree. In addition, the district court found that neither party had abused the children, but that both had been blind to what had been done by others. The district court declined to adopt many of the recommendations made by the GAL, indicating that it would not, and could not, micro-manage this case. The order denying the petitions to modify the divorce decree provided this guidance:

4. Since their divorce, both parties have moved increasing the distance between their homes.

5. Since their divorce, both parties have brought new caretakers into the children's lives who have abused the children. There is no evidence that either parent has abused the children, but that they have turned a blind eye to the abuse and excessive discipline dispersed by [Stepmother] and [Mother's] fiancé. The parents now minimize or attempt to rationalize such behavior and are less than committed to making changes necessary to remove the abusers from the children's lives.

6. These changes are not substantial and material as required by law for purposes of granting either party the relief they seek.

7. The recommendations of the Guardian *ad Litem* which also finds there is no change of circumstance should be adopted. However, the recommendations of the GAL regarding contacts with third parties and limitations on alcohol use would require the Court to micro-manage this case and the Court will not do so.

. . . .

9. The terms and conditions of the *Stipulated Decree of Divorce* should not be modified.

10. The *Temporary Restraining Order* entered in this matter on July 8, 2002 should be rescinded.

11. Legal and physical custody of the two youngest children should be returned to [Mother] subject to final adjudication of Sheridan County Juvenile Case No. J–1–1–03. Any supervision by the Department of Family Services in the on-going juvenile action in Sheridan County, Wyoming should focus on reunification of both families, not just [Father's] home.

## STANDARD OF REVIEW

[¶ 10] In custody matters, the welfare and needs of the children must be given paramount consideration. That which is in the best interests of the child is a question for the trier of fact, and we will not overturn the decision of a trial court unless we are persuaded that an abuse of discretion is present or that there has been a violation of some legal principle. *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo.1998). When we are asked to review the action of a district court, in the context of the abuse of discretion standard, the core of the inquiry we must make is the question of the reasonableness of the choice made by the trial court. Judicial discretion is a composite of many things. Among these are conclusions drawn from objective criteria. It means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. We must ask whether or not the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. *Cobb v. Cobb*, 2 P.3d 578, 579 (Wyo.2000) (quoting *Thomas v. Thomas*, 983 P.2d 717, 719 (Wyo.1999)). The party seeking to modify established child custody provisions of a divorce decree has the burden of showing that a material change in circumstances that affects the child's welfare occurred subsequent to the entry of the initial decree, that the change warrants modification of the decree, and that the modification will be in the best interests of the affected child. *Cobb*, 2 P.3d at 579–80 (quoting *Sorensen v. May*, 944 P.2d 429, 432 (Wyo.1997)).

[¶ 11] A child's preference as to custody may be considered by the trial court:

In determining the weight to be given a child's preference several factors should be considered: the age of the child; the reason for the preference; the relative fitness of the preferred and non-preferred parent; the hostility, if any, of the child to the non-preferred parent; the preference of other siblings; and whether the child's preference has been tainted or influenced by one parent against the other.

Although custodial preference is not conclusive, the court here was entitled to give more consideration to a fifteen-year old girl's preference than say, the preference of a six-year old child.

*Yates v. Yates*, 702 P.2d 1252, 1256 (Wyo. 1985).

## DISCUSSION

[¶ 12] We are unable to agree with the district court that there was not a material change in circumstances in this case. Mother's relocation to South Dakota might well have been viewed as a material change. The testimony the district court heard was that the unusual custody arrangements to which these parents agreed (it was not fashioned by the district court), worked only so long as the parents both resided in Crook County and were close enough to each other to make it functional. It did not work once Mother was in South Dakota, sometimes without a car to transport the children, and Father was not free, nor was he always able, to travel to South Dakota to facilitate visitation. That Mother's fiancé, and her brother, were accused of sexually assaulting the parties' youngest daughter also might well have been viewed as a material change of circumstances. There was another potential material change when the youngest children were uprooted from Mother's home, and sent to live in Sheridan County with Father's new wife, the parties' two other children, and Stepmother's three children. There was likely a material change of circumstance when all four children were taken from their home and placed in DFS custody (in a group home) as a result of Stepmother's abusive acts against the children. There were potential material changes of circumstance when the children were placed in the custody of Father's mother and stepfather, and when Father was finally accorded full custody

again, with his mother and stepfather providing a backup for Father. This list of changes in circumstances is not meant to be exhaustive. While any one of them might well have served to require the district court to reconsider a more suitable custodial arrangement for the children, the totality of these circumstances requires a remand for the district court to fully address the needs of these children with respect to custody. For a more complete discussion, *see* George A. Locke, *Change in Circumstances Justifying Modification of Child Custody Order*, 6 POF 2d 499 (1975 and Supp.2001).

[¶ 13] However, a material change of circumstance does not automatically equate with a change in custody. Custody must be arranged so as to be in the best interests of the child(ren) on an individualized basis. Given all that has occurred since the divorce, the district court needs to reassess the wisdom of the divided custody arrangement in light of the material changes in circumstances that have occurred. Although the parties agreed to that arrangement, they did so under circumstances that no longer exist. Moreover, the record does not reflect that the district court assessed the advisability of the arrangement at the outset. We agree that the district court should not have to "micro-manage" the custody arrangement. The district court adopted a "PARENTAL COOPERATION" standard in the initial decree and, in light of the rather serious problems faced by this family, some additional management, as suggested by the GAL, may well be in order. It is evident from the record that the juvenile proceedings in Sheridan County had not yet ended when the district court entered the order now before us. One gap in that process appeared to be an assessment of Mother's home. It is evident that the children have expressed a preference as to where they want to live, and the district court should take that into consideration as well. It also appears that by now the juvenile matter in Sheridan may have developed additional information that is pertinent to the most desirable custody arrangement for the children and it is important for the district court to have all that information available to it.

## CONCLUSION

[¶ 14] We reverse the order of the district court because we conclude it erred in finding that no material change in circumstances had been demonstrated. The matter is remanded to the district court for further proceedings consistent with this opinion.