2012 WY 98

**Joshua Jorgen HANSON, Appellant (Petitioner/Plaintiff),**

**v.**

**Melanie Smith BELVEAL, f/n/a Melanie Ann Hanson, Appellee (Respondent/Defendant).**

**Nos. S–11–0130, S–11–0131.**

Supreme Court of Wyoming.

July 19, 2012.

Representing Appellant: Elizabeth Greenwood and Inga L. Parsons, Attorneys at Law, Pinedale, Wyoming.

Representing Appellee: Sky D. Phifer of Phifer Law Office, Lander, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1]   These combined appeals arise out of post-divorce proceedings.  In No. S–11–0130, Father appeals the district court's order denying his petition to modify the parties' divorce decree, which granted mother primary physical custody of their minor child, and to grant him primary physical custody of their child.  In No. S–11–0131, Father appeals the district court's order that he pay Mother $4,680 for attorney's fees and costs she incurred in defending Father's petition to modify custody.  We affirm both orders.

## ISSUES

[¶ 2]   Father presents five issues for our review, which we have rephrased for the sake of simplicity as follows:

I.   Whether the district court erred in finding unconstitutional a clause in the Stipulated Divorce Decree which provided that a move out of state by either party constituted a material change of circumstances sufficient to seek a modification of custody.

II.   Whether the district court erred in finding there had not been a material change in circumstances to justify a change in custody.

III.   Whether the district court erred in finding that a modification of custody would not be in the best interests of the child.

IV.   Whether the district court reversibly erred in admitting hearsay statements of the child's treating physician and excluding certified copies of the criminal convictions of Mother's brother and her current spouse.

V.   Whether the district court erred in awarding Mother reasonable attorney fees.

## FACTS AND PROCEEDINGS

[¶ 3]   The parties were married in September 2006 in Pinedale, Wyoming, and lived in that area at the time of their divorce in March 2009.  Mother brought into the marriage a child from a previous relationship, and the parties' marriage produced one son, CJH, who was born in April 2007.  The parties divorced in March 2009, and, pursuant to a Stipulated Decree of Divorce entered by the district court, the parties had joint legal custody of CJH, with Mother being the primary residential custodial parent subject to reasonable liberal visitation by Father.  The decree included a relocation provision, which stated:

> It is agreed that if one or the other parties move out of the state of Wyoming then for purposes of this agreement, the parties agree that such a move constitutes a material change of circumstance sufficient to seek a modification of this agreement.

[¶ 4]   In October 2009, Mother, who was remarried and pregnant with her third child, informed Father of her intention to move with CJH to Driggs, Idaho.  Father was residing in Daniel, Wyoming, as he had been for several years.  On October 14, 2009, Father filed a petition requesting, among other relief, an order for custody modification granting him residential and physical custody of the parties' minor child, CJH.  In the petition, Father alleged Mother's intention to move with CJH to Idaho and, referencing the relocation provision contained in their divorce decree, alleged that the move constituted a material change of circumstance warranting modification of custody.  Father also alleged the occurrence of additional changes of circumstance and that those changes of circumstance warranted modification of custody.

[¶ 5]   Mother timely responded to Father's petition, alleging, among other matters, that the relocation provision contained in their divorce decree was void and unenforceable; denying the occurrence of additional material changes of circumstance; and asserting a counterclaim which sought, among other relief, modification of Father's visitation and attorney's fees and costs.

[¶ 6]   Mother and CJH moved to Driggs, Idaho, in November 2009, but moved back to Wyoming a few months later, in January 2010.   In between Mother's move to Idaho and return to Wyoming, the district court held a hearing concerning temporary custody of CJH and determined that physical custody of the child should remain with Mother pending resolution of Father's petition.   At that hearing, the district court expressed concern about the divorce decree's relocation provision and directed the parties to brief the issue whether that provision affected the court's subject matter jurisdiction to entertain Father's petition.

[¶ 7]   In its decision letter issued on August 5, 2010, the district court ruled that it had jurisdiction to consider the merits of Father's petition.   In particular, referencing the divorce decree's relocation provision, the court stated that it

> is bound to make an independent determination, after a hearing, as to whether [Father] has carried his burden of proving the existence of "a material change in circumstances" since entry of the Decree *and* whether "the modification ... would be in the best interests of the children [sic] pursuant to W.S. 20–2–201(a)." [Emphasis in original.]

[¶ 8]   On January 26 and 27, 2011, the district court conducted the hearing on Father's petition, receiving testimony and other evidence from both parties.   As previously noted, although Mother had moved from the Pinedale area to Idaho in November 2009, which relocation was one of the changes of circumstance Father alleged warranted a custody modification, Mother had moved back to Wyoming a few months later in January 2010 and was living in Lander, Wyoming, at the time of the hearing.   Also as previously noted, Father had lived in Daniel, Wyoming, for several years before filing his modification petition and was still living there at the time of the hearing.   In addition to this circumstance, the parties presented testimony and evidence concerning Father's allegations of changed circumstances including Mother's instability for having moved several times within Wyoming, and having changed employment;   Mother's keeping cats and dogs in her home despite CJH's allergies;   Mother's husband having a criminal history and a diagnosed mental condition;   Mother's having once exposed CJH to her former boyfriend who allegedly abused the child;   and Mother's having occasionally left CJH at her parents' home where her brother, a registered sex offender, resided.

[¶ 9]   In a lengthy decision letter dated February 9, 2011, and filed February 11, 2011, the district court issued its decision denying Father's petition for modification.   On March 2, 2011, the court entered its order.

[¶ 10]   Earlier, while the custody modification action was pending, Mother had filed a motion for an allowance of money to defend the action.   The court denied that motion, as it explained in its decision letter filed January 18, 2011.   Later, Mother renewed her motion for allowance of money to defend the action, supported by her attorney's affidavit.   On February 22, 2011, the court filed its decision letter explaining its decision to award Mother the sum of $4,680.00 for costs and attorney's fees.   On March 21, 2011, the court entered its order awarding that sum.

## STANDARD OF REVIEW

[¶ 11]   The appellate process reduces itself to only three types of review: review of the sufficiency of the evidence to meet the required burden of persuasion at the trial level;   review of the exercise of discretion;   and plenary review of the choice, interpretation and application of the controlling legal precepts.

Ruggero J. Aldisert, *Opinion Writing* 53 (West Publishing Co. 1990).

[¶ 12]   In this appeal, all three types of review may be applied, depending on the specific issue under discussion.   With respect to Father's challenge to the district court's ruling that the divorce decree's relocation provision is unconstitutional, such an issue would normally receive plenary or de novo review.   *Hageman v. Goshen Cty. Sch. Dist. No. 1*, 2011 WY 91, ¶ 5, 256 P.3d 487, 491 (Wyo.2011).   We have recognized, however, that a fundamental rule of judicial restraint requires us to forgo addressing a constitu-

tional issue if we can resolve the case on other grounds. *Wilson v. Bd. of Cty. Comm'rs of Cty. of Teton*, 2007 WY 42, ¶ 14, 153 P.3d 917, 922 (Wyo.2007); *see also In re LePage*, 2001 WY 26, ¶ 18, 18 P.3d 1177, 1181 (Wyo.2001); *Pisano v. Shillinger*, 835 P.2d 1136, 1138 (Wyo.1992); *Wheeler v. Parker Drilling Co.*, 803 P.2d 1379, 1383 n. 1 (Wyo. 1991); *K N Energy, Inc. v. City of Casper*, 755 P.2d 207, 210 (Wyo.1988) (citing cases); and *Schoeller v. Bd. of County Comm'rs of Park Cty.*, 568 P.2d 869, 879 (Wyo.1977).

[¶ 13] With respect to the modification issues, we shall apply our usual standards for reviewing district court findings relating to the required material change of circumstances and the best interests of the children. Regarding the material change of circumstances, this Court has said:

"A district court's finding concerning a material change in circumstances is principally a factual determination to which we accord great deference." [*In re TLJ*, 2006 WY 28, ¶ 11, 129 P.3d 874, 877 (Wyo. 2006) ], citing *Yates v. Yates*, 702 P.2d 1252, 1256–57 (Wyo.1985). Our task is simply to determine whether, examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did. *Id.*

*Morris v. Morris*, 2007 WY 174, ¶ 7, 170 P.3d 86, 89 (Wyo.2007).

[¶ 14] Our standard for reviewing the district court's findings relating to the best interests of the children is likewise a deferential review.

Decisions pertaining to child custody are within the sound discretion of the district court and will not be disturbed on appeal absent procedural error or a clear abuse of discretion. *Selvey v. Selvey*, 2004 WY 166, ¶ 15, 102 P.3d 210, 214 (Wyo.2004). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." *Id.* (quoting *Fergusson v. Fergusson*, 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo.2002)). In determining whether an abuse of discre-

tion occurred, our core inquiry is the reasonableness of the district court's decision. *Selvey*, ¶ 15, 102 P.3d at 214 (citing *Metz v. Metz*, 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo.2003)). We view the evidence in the light most favorable to the district court's determination, affording to the prevailing party every favorable inference and omitting from our consideration conflicting evidence. *Selvey*, ¶ 15, 102 P.3d at 214 (citing *GGV v. JLR*, 2002 WY 19, ¶ 14, 39 P.3d 1066, 1074 (Wyo.2002)).

*In re TLJ*, 2006 WY 28, ¶ 6, 129 P.3d 874, 876 (Wyo.2006).

[¶ 15] A district court's evidentiary rulings are discretionary, and we review them as follows:

A trial court's decision on the admissibility of evidence is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion. As long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal.

Even if the district court admitted evidence in error, we must consider whether the error was prejudicial or harmless. Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made. Prejudicial error requires reversal, while harmless error does not.

*Nelson v. State*, 2010 WY 159, ¶ 29, 245 P.3d 282, 289 (Wyo.2010) (quoting *Reay v. State*, 2008 WY 13, ¶ 8, 176 P.3d 647, 650 (Wyo. 2008)).

[¶ 16] Finally, with respect to the district court's decision to award attorney's fees, such decisions rest within the sound discretion of the district court, and this Court will not overturn the decision absent a clear abuse of that discretion. *Black v. De Black*, 1 P.3d 1244, 1252 (Wyo.2000); *Rocha v. Rocha*, 925 P.2d 231, 234 (Wyo.1996).

## DISCUSSION

### A. Custody Modification

[¶ 17] A court has " 'only that authority to act which is conferred by the sub-

ject statute.'" *Weiss v. Weiss,* 2009 WY 124, ¶ 13, 217 P.3d 408, 411 (Wyo.2009) (quoting *Bush v. State,* 2003 WY 156, ¶ 9, 79 P.3d 1178, 1183 (Wyo.2003)). In that regard, we have said that "[i]t is well settled that divorce is purely a statutory process, with courts having no authority in such proceedings other than that provided by statute." *Weiss,* ¶ 13, 217 P.3d at 412 (citing *Urbach v. Urbach,* 52 Wyo. 207, 73 P.2d 953, 956 (1937); 24 Am.Jur.2d *Divorce and Separation* § 7 (2008)). By statute, a custody order may be modified under certain defined circumstances:

> A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20–2–201(a). In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances.

Wyo. Stat. Ann. § 20–2–204(c) (LexisNexis 2009) (amended 2011).

[¶ 18] As noted above, this Court has recognized the jurisdictional limits this statute places on the authority of a district court to modify a custody order.

> This Court has construed this provision to require a two-step approach to custody modification actions. *See KES v. CAT,* 2005 WY 29, ¶ 10, 107 P.3d 779, 782 (Wyo. 2005); *Jackson v. Jackson,* 2004 WY 99, ¶ 8, 96 P.3d 21, 24 (Wyo.2004); *JRS v. GMS,* 2004 WY 60, ¶ 10, 90 P.3d 718, 723 (Wyo.2004); *Cobb v. Cobb,* 2 P.3d 578, 579– 80 (Wyo.2000). The first step requires a showing that there has been "a material change in circumstances since the entry of the order in question." § 20–2–204(c). Because of the res judicata effect afforded custody orders, such a finding is a threshold requirement. *Hertzler v. Hertzler,* 908 P.2d 946, 949–50 (Wyo.1995). The district court does not properly acquire jurisdic-

tion to reopen an existing custody order until there has been a showing of "a substantial or material change of circumstances which outweigh society's interest in applying the doctrine of res judicata" to a custody order. *Kreuter v. Kreuter,* 728 P.2d 1129, 1130 (Wyo.1986). *See generally Harshberger v. Harshberger,* 2005 WY 99, ¶¶ 12–13, 117 P.3d 1244, 1250–51 (Wyo. 2005); *Watt v. Watt,* 971 P.2d 608, 613 (Wyo.1999); *Hertzler,* 908 P.2d at 949–50; *Gurney v. Gurney,* 899 P.2d 52, 54 (Wyo. 1995). In short, unless the district court finds a material change in circumstances, it cannot proceed to the second step—determining whether a modification would be in the best interests of the child.

*TLJ,* ¶ 8, 129 P.3d at 876.

[¶ 19] The party seeking modification of a custody order carries the burden of meeting the statutory requirements.

> Under the statute, the party seeking modification of the child custody provisions of a decree has the burden of establishing that a material change in circumstances which affects the children's welfare has occurred since the decree was entered, the change justifies modification of the decree and modification would be in the children's best interests.

*Morris,* ¶ 6, 170 P.3d at 89 (citing *Jackson v. Jackson,* 2004 WY 99, ¶ 8, 96 P.3d 21, 24 (Wyo.2004); *Fergusson v. Fergusson,* 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo.2002)).

### 1. *Constitutionality of Relocation Provision*

[¶ 20] In his first argument, Father challenges the district court's ruling that the divorce decree's relocation provision, which stipulated that a move outside Wyoming by either parent would constitute a material change in circumstances, could not alone serve as a basis to modify the decree's custody provision. The district court found the relocation provision to be unconstitutional and ruled that the court itself was required to make an independent determination of whether there had been a material change in circumstances that would support a custody modification. On appeal, Father argues that the relocation provision is distinguishable

from those this Court has held unconstitutional and does not infringe on either party's constitutional right to travel or relocate. In the alternative, Father contends that constitutional rights may be waived and that the parties knowingly and voluntarily waived their constitutional right to travel or relocate when they stipulated to the decree's relocation provision.

[¶ 21] This Court has recognized the constitutional right of a parent to travel or relocate, and we have held that a custodial determination may not infringe on that right.

> The right of travel enjoyed by a citizen carries with it the right of a custodial parent to have the children move with that parent. This right is not to be denied, impaired, or disparaged unless clear evidence before the court demonstrates another substantial and material change of circumstance and establishes the detrimental effect of the move upon the children.

*Testerman v. Testerman,* 2008 WY 112, ¶ 18, 193 P.3d 1141, 1146 (Wyo.2008) (quoting *Watt v. Watt,* 971 P.2d 608, 615–16 (Wyo. 1999)); *see also Harshberger v. Harshberger,* 2005 WY 99, ¶ 12, 117 P.3d 1244, 1250–51 (Wyo.2005); *Resor v. Resor,* 987 P.2d 146, 151 (Wyo.1999).

[¶ 22] We have also held that, even independent of any constitutional concerns, a parent's relocation, by itself, is not a material change in circumstances warranting modification of a custody order. *Morris,* ¶ 18, 170 P.3d at 92; *Gurney v. Gurney,* 899 P.2d 52, 55 (Wyo.1995); *Love v. Love,* 851 P.2d 1283, 1286–89 (Wyo.1993); *Martin v. Martin,* 798 P.2d 321, 323 (Wyo.1990). Our precedent limits the use of a parent's relocation as a factor in determining whether there has been a material change in circumstances.

> *Love* and *Gurney* together capture a rule that a relocation by a custodial parent, where the motivation for the relocation is legitimate, sincere, in good faith, and still permits reasonable visitation by the noncustodial parent, is not a substantial and material change in circumstances. A trial court abuses its discretion in making a contrary ruling that such a move amounts to a substantial and material change in circumstances.

*Testerman,* ¶ 19, 193 P.3d at 1146 (quoting *Watt,* 971 P.2d at 614).

[¶ 23] In reaching our decision in *Love,* that relocation alone is not a material change in circumstances warranting a custody modification, this Court looked to the manner in which other states addressed the issue and reasoned:

> In this context, we agree with a Michigan court which stated:
>
> > " 'We live in a transient society. With respect to the best interests of a child, state boundaries are artificial and meaningless; there is no presumption that bringing up a child in Michigan has any advantage (or disadvantage) over Missouri or Georgia, or any other state. To conclude otherwise would be a meaningless generalization. Restrictions upon where a custodial parent may live, in terms of geography, are not realistic. In every state there are good and bad places to bring up a child.' "

*DeGrow v. DeGrow,* 112 Mich.App. 260, 315 N.W.2d 915, 918 (1982) (quoting *Hutchins v. Hutchins,* 84 Mich.App. 236, 269 N.W.2d 539, 540 (1978) (Beasley, J., concurring).

\* \* \* \*

> To this discussion we add the consideration of whether an "established custodial environment continues to exist despite a change in the children's domicile." *DeGrow,* 315 N.W.2d at 917. This situation has been defined as one that

> > emphasizes the continuity and strength of an established relationship between a custodian and a child. The custodial environment is the family unit which cannot be destroyed by a simple change in geographic location. The family unit still will be preserved in the new domicile.

*DeGrow,* 315 N.W.2d at 918.

As the district court recognized, despite a change in residence, there is no reason to suggest that mother will not continue to

provide a caring, nurturing environment for her children.

*Love,* 851 P.2d at 1288–89.

[¶ 24] It is unrealistic to expect divorced parents to remain forever in the same location, *Testerman,* ¶ 18, 193 P.3d at 1146, and whether a parent's relocation is a material change in circumstance is a fact sensitive analysis that requires consideration of more than just the relocation itself. *Love,* 851 P.2d at 1287; *Martin,* 798 P.2d at 323. Decree provisions that purport to define an event that will constitute a material change of circumstance or affect a child's best interest at some future undefined time are therefore particularly problematic. As we explained in *Martin,* where the decree provided for an automatic change of custody if either parent moved from Laramie:

> The district court's anticipatory conclusion that the best interests of the children will be served by a nine-month/three-month split in favor of the parent remaining in Laramie is an abuse of discretion. As noted above, the test for child custody is the best interests of the children, and such a decision cannot be made without the district court having before it all facts necessary to make such a determination. What those facts may be, if and when one or the other parent leaves Laramie, can only be pure speculation at this point in time. Such speculation is not a substitute for complete analysis of all existing circumstances when and if a change in the established child custody arrangement becomes necessary.

*Martin,* 798 P.2d at 323; *see also Testerman,* ¶ 19, 193 P.3d at 1146 (holding district court abused its discretion by including a provision in the decree that either parent's relocation "may be considered by the Court as a change of circumstances sufficient to give the Court jurisdiction to consider a custody modification"); *Harshberger,* ¶ 8, 117 P.3d at 1249 (noting that Court has rejected such a scheme because it circumvents the district court's duty to evaluate custody decisions).

[¶ 25] This Court's precedent is clear that a custodial determination may not infringe on a parent's constitutional right to travel or relocate. As important, however, given our adherence to principles of res judicata, and the interests of finality in custody orders, is our precedent that a parent's relocation, by itself, cannot be considered a material change of circumstance that would warrant modification of a custody order. It was pursuant to all of these principles that the district court ruled that it must independently evaluate all of the facts and determine whether there had been a material change of circumstances. The question Father presents is essentially whether the parties' relocation stipulation deprived the district court of its discretion to make that determination. We hold that the parties' agreement did not and could not have stripped the court of its authority and obligation to independently determine whether there had been a material change in circumstances.

[¶ 26] The parties' agreement suffers from the same defect this Court found in the decrees at issue in *Martin* and *Testerman.* The relocation stipulation was an "anticipatory conclusion" that a move outside Wyoming by either parent would result in a material change to the detriment of the parties' child. *See Martin,* 798 P.2d at 323. In fact, the parties did not and could not know that a move by either parent outside Wyoming would result in a material change of circumstances. The conclusion was purely speculative and made without consideration of the surrounding facts, and the district court thus would have abused its discretion had it accepted the parties' prior agreement as grounds to find a material change of circumstances. *See Martin,* 798 P.2d at 323; *Testerman,* ¶ 19, 193 P.3d at 1146.

[¶ 27] An agreement by the parties to a modification proceeding that there has been a material change of circumstances is not and cannot be a substitute for the district court's evaluation of the surrounding facts and its independent determination that there has been the required change in circumstances. As noted above, a district court's authority to modify a divorce decree is statutorily confined to those instances where there has been a material change in circumstances and in the absence of such a finding, the court is without subject

matter jurisdiction to modify custody. *Weiss,* ¶ 13, 217 P.3d at 412; *TLJ,* ¶ 8, 129 P.3d at 876. We have long held that parties may not waive jurisdictional defects or consent to subject matter jurisdiction where it otherwise does not exist, and the parties' stipulation that there has been a material change in circumstances thus cannot be the controlling consideration. *See Weller v. Weller,* 960 P.2d 493, 496 (Wyo.1998) ("A lack of subject matter jurisdiction constitutes a fundamental defect in a proceeding which cannot be cured by waiver or consent by the parties."); *White v. Bd. of Land Comm'rs,* 595 P.2d 76, 79 (Wyo.1979) ("Parties cannot confer jurisdiction by consent.").

[¶ 28] Our decision in this case does not conflict with and should not be construed to undermine our decisions in *Gurney,* 899 P.2d at 55, and *Gaines v. Doby,* 794 P.2d 566, 571 (Wyo.1990). In *Gurney,* the divorce decree granted the parents joint custody of their child, but within fifty days after the decree was entered, the parties agreed the arrangement was not working and each parent sought primary custody. *Gurney,* 899 P.2d at 53. We found no abuse of discretion in the district court's reopening of the custody order.

> A second distinctive feature suggests a joint custody order should be more readily opened. The premise of the joint custody order is the parents' ability to resolve between themselves the custodial details. There can be little question that joint custody requires sincere dedication on the part of each parent to safeguard the security and stability vital to a child's best interest. When the parents are unable to make this cooperative arrangement work, a change of circumstances justifying judicial reexamination of the original joint custody order is demonstrated. *See [Moody v. Moody,* 715 P.2d 507, 510 (Utah 1985) ].
>
> Here, both parties asserted joint custody was not working. Logically, such assertions end the judicial inquiry. *Gaines v. Doby,* 794 P.2d 566 (Wyo.1990).

*Gurney,* 899 P.2d at 55.

[¶ 29] In *Gaines,* the district court modified the child visitation provisions of a divorce decree after both parents requested that the decree be reopened and upon finding a material change in circumstances in the mother's repeated unilateral changes to and interference with the father's visitation. *Gaines,* 794 P.2d at 570–71. We upheld the district court's modification, explaining:

> Keeping in mind the foregoing evidence, as well as the other testimony adduced at hearing, we are convinced that the district court neither erred nor abused its discretion in its disposition of the parties' motions. We find that the parties willingly presented and tried to the court the modification issues relating to visitation and medical insurance. Since the parties induced the district court to act by their motions to modify these provisions of the original divorce decree and by their litigation posture at the hearing on the motions, neither of them can be heard on appeal to argue error based upon that action. *Thatcher & Sons, Inc. v. Norwest Bank Casper, N.A.,* 750 P.2d 1324, 1328 (Wyo. 1988); *Appeal of Williams,* 626 P.2d 564, 571 (Wyo.1981), *cert. denied,* 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 [ (1981) ]; and *Weber v. Johnston Fuel Liners, Inc.,* 519 P.2d 972, 978 (Wyo.1974).
>
> We determine that the district court could reasonably conclude from the evidence that the parties wanted it to exercise its revisory powers with respect to the visitation provisions and the medical insurance provision, that changes in circumstances had occurred, that these changes together with the parties' invitations to revise the original decree warranted modification of the decree, and that the modification would be in the best interests of the parties' minor child.

*Gaines,* 794 P.2d at 571.

[¶ 30] While in both *Gaines* and *Gurney,* this Court found it significant that both parents had asked the district court to modify custody or visitation and held that neither party could claim error based upon that invitation, the crucial consideration was not the parties' agreement to reopen. In *Gaines,* the district court found a material change of circumstances aside from the parties' invitations to reopen the decree. *Gaines,* 794 P.2d at 571. In *Gurney,* the

critical finding was the parties' agreement that the originally-ordered custody arrangement simply was not working. *Gurney*, 899 P.2d at 55. It is not a bare agreement to reopen the decree that represents a material change in circumstances, but rather the parents' agreement that the custodial arrangement is not at present working or serving the child's best interests. *Id.; see also Roemmich v. Roemmich*, 2010 WY 115, ¶ 12, 238 P.3d 89, 93 (Wyo.2010) ("when both parents inform the court that a joint physical custody arrangement is not working, a sufficient change in circumstances justifying the reopening of the custody order has been presented").

[¶ 31] In this case, the parents do not agree that the present custodial arrangement is not working, and Father did not present any other agreement between the parties, as to the current circumstances, that could support a conclusive finding of a material change in circumstances. This case is therefore distinguishable from our holdings in *Roemmich, Gurney,* and *Gaines*.

[¶ 32] Because we have found that the parties' relocation stipulation was speculative and unenforceable, the provision's constitutionality need not be resolved. We thus will not address whether the provision was constitutional or whether the parties could waive their constitutional rights to travel and relocate. *See Wilson,* ¶ 14, 153 P.3d at 922 (judicial restraint requires us to forgo addressing a constitutional issue if we can resolve the case on other grounds).

### 2. *District Court's Finding of No Material Change of Circumstances*

[¶ 33] In his amended petition and at trial, Father presented a litany of alleged factors on which he based his argument that there had been a material change of circumstances that would justify modifying custody of the parties' child. On appeal, Father has presented argument on the following factors: 1) Mother's relocation outside Wyoming; 2) the criminal record and mental condition of Mother's current husband; 3) Mother's three to five moves since entry of the divorce decree; 4) Mother's keeping of cats and dogs in the home despite CJH's allergies and the need to keep CJH on allergy medications; 4) the possible abuse of CJH by Mother's former boyfriend; and 5) that Mother's brother is a registered sex offender and lives with Mother's parents who sometimes take care of CJH. Because these are the factors which Father cites in the portion of his argument devoted to the material change of circumstances standard, they are the only factors we will include in our review of the district court's determination that Father did not show a material change of circumstances.

[¶ 34] As we begin our analysis, we reiterate that the petitioning party carries the burden of establishing that "a material change in circumstances which affects the children's welfare has occurred since the decree was entered." *Morris,* ¶ 6, 170 P.3d at 89. The district court's determination as to a change of material circumstances is " 'principally a factual determination to which we accord great deference.' Our task is simply to determine whether, examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did." *Morris,* ¶ 7, 170 P.3d at 89 (quoting *TLJ,* ¶ 11, 129 P.3d at 877) (citations omitted).

#### a. *Mother's Relocation Outside Wyoming*

[¶ 35] By the time Father's petition was heard, Mother had moved back to Wyoming and was living in Lander. Father, on the other hand, had accepted a position in Minot, North Dakota. He testified that while he was spending a substantial amount of time in Minot and intended to move there, he had not finalized his plans to relocate. Father did not seek to amend his petition to add his own potential relocation as a factor for the court to consider in determining whether there was a material change in circumstances, or seek a modification other than changing primary custody.

[¶ 36] Given that Mother had returned to Wyoming by the time of trial and that Father did not request consideration of his own relocation, the parties' respective relocations outside Wyoming were not factors for the district court's consideration in determining whether there had been a mate-

rial change in circumstances. We therefore do not give the relocations any further consideration.

### b. *Criminal Record and Mental Condition of Mother's Current Husband*

[¶ 37] With respect to the alleged mental condition of Mother's current husband, Father cites Mother's testimony that her current husband "cracked" under pressure. Mother testified this occurred when her current husband learned she was pregnant with his child. According to Mother's testimony, he left her for a period of several weeks and then returned. Father also cites the following testimony by Mother:

Q. Okay. And he has also been diagnosed as bipolar; isn't that correct?

A. He has been diagnosed bipolar by a doctor who has also diagnosed five other people that we know bipolar and he's actually in the process of getting a second opinion.

Q. But he has been diagnosed as bipolar, correct?

A. From a doctor that we don't trust.

Q. And this is new since we took your deposition in December; is that correct? At that time you admitted that he was on medication, correct?

A. Yes.

Q. What medication is he taking?

A. Lamotrigine.

Q. Do you know how to spell that?

A. No.

[¶ 38] Aside from this testimony, the record contains no evidence, medical or otherwise, concerning the alleged mental condition of Mother's current husband and how that has or may affect his ability to care for or be in the company of CJH. Looking at the record in the light most favorable to the prevailing party, we find no clear error in the district court's conclusion that insufficient evidence was presented to show that Mother's current spouse has ever jeopardized the safety and wellbeing of CJH.

[¶ 39] With respect to the criminal record of Mother's current husband, the evidence showed a DUI conviction, speeding viola-tions, and an arrest or conviction for an open container and possession of Class B drug paraphernalia, all of which occurred before Mother met him. The record contains no evidence of criminal conduct since Mother and her current husband were married, and Mother testified she has never seen her husband intoxicated and that he is subject to random drug testing in his position as a volunteer fireman. Moreover, during closing argument, Father's attorney argued:

An example of what I'm saying, your Honor, is her disregard in even exploring why her fiancé of short duration, who she left to watch both of her children, was on supervised probation. It's not the fact that he necessarily had a DUI or drug paraphernalia history or numerous speeding tickets, etcetera, that may not in and of itself mean he is a bad influence on [CJH], but especially when one considers he was 19 when she moved him into her house, but it shows a complete lack of judgment in leaving my client's child with a man who she doesn't really even know and why—and doesn't inquire why he is on supervised probation.

[¶ 40] Looking at the record in the light most favorable to the prevailing party, we again find no clear error in the district court's conclusion that insufficient evidence was presented to show that Mother's current spouse has ever jeopardized the safety and wellbeing of CJH. The record contains no evidence of improper or illegal behavior in CJH's presence, and it is certainly difficult to find a material lack of judgment in Mother's failure to inquire into a misdemeanor history that Father concedes has no effect on the child.

### c. *Living Conditions that Affect Child's Allergies*

[¶ 41] Father next contends that the district court erred in not finding a material change of circumstances in Mother's keeping of two dogs and a cat despite CJH's allergies and the need to keep him on allergy medications. In particular, Father takes issue with the district court's finding that the allergy specialists have approved the presence of the pets so long as CJH is not unduly exposed to the cat. He argues this conclu-

sion is against the great weight of the evidence and improperly relies on hearsay evidence of the allergist's medical opinion.

[¶ 42] Even if we exclude from our consideration Mother's testimony concerning the allergist's medical opinion, the admission of which we will discuss below, we can find no clear error in the district court's rejection of CJH's allergies and Mother's keeping of pets as a material change of circumstances. Father carried the burden of showing a material change of circumstance detrimental to the child, and he presented no evidence concerning the precise nature of CJH's allergies, the impact of living with pets, if any, the side effects of the allergy medications on CJH, if any, or evidence that Mother is acting contrary to medical advice in the living conditions she is providing or the manner in which she is medicating CJH. All we know from the record, which we again must review in the light most favorable to the prevailing party, is what we learned from Mother's testimony: that CJH suffers from allergies, that Mother keeps a cat and two dogs in the home, that CJH's allergies are controlled with allergy medications, and that Mother has not researched the side effects of those medications. Father did not meet his burden of showing that CJH's allergies and related living conditions presented a material change of circumstances.

### d. Possible Abuse of CJH by Mother's Former Boyfriend

[¶ 43] Father cites but does not elaborate on this factor. Mother testified that in April of 2009, she allowed her former boyfriend and father of her first child to watch CJH. Mother thereafter discovered marks on CJH and reported the incident to the Department of Family Services and law enforcement. Mother also "kicked [the former boyfriend] out" of her life and obtained a restraining order against him. The district court rejected the incident as a material change of circumstances, finding that it was remote and not a current problem warranting modification of custody. Father presented no evidence to the contrary, and we find no clear error in the court's determination.

### e. Mother's Three to Five Moves Since Entry of Decree

[¶ 44] The district court found that Mother had moved with CJH three to five times since the decree was entered, but it further found that Father had not presented evidence that Mother's moves adversely affected CJH or that Mother's moves were made in bad faith. The district court thus rejected Mother's moves as a material change of circumstances. On appeal, Father cites Mother's moves as an alleged change of circumstances but does not elaborate or challenge the district court's findings relating to the Mother's moves. We can find no clear error in the court's determination that Mother's moves were not a material change of circumstances.

### f. CJH Exposure to Registered Sex Offender

[¶ 45] Father cites as a material change of circumstance that Mother's parents sometimes babysit CJH, and Mother's brother, who is a registered sex offender, lives with her parents. The district court rejected this as a material change of circumstance based on its finding that Mother's brother is not permitted to be in the presence of CJH without an adult present. Father does not challenge the district court's finding and again cites this factor without elaboration. We find no clear error in the district court's rejection of the status of Mother's brother as a material change in circumstance.

Father cites to our decision in *JRS v. GMS*, 2004 WY 60, 90 P.3d 718 (Wyo. 2004), and argues that as in that case, the list of changed circumstances he has presented should be viewed in combination and when so viewed, it shows a material change of circumstances. In *JRS*, we found a material change of circumstances described as follows:

> We are unable to agree with the district court that there was not a material change in circumstances in this case. Mother's relocation to South Dakota might well have been viewed as a material change. The testimony the district court heard was that the unusual custody arrangements to which these parents agreed (it was not

fashioned by the district court), worked only so long as the parents both resided in Crook County and were close enough to each other to make it functional. It did not work once Mother was in South Dakota, sometimes without a car to transport the children, and Father was not free, nor was he always able, to travel to South Dakota to facilitate visitation. That Mother's fiancé, and her brother, were accused of sexually assaulting the parties' youngest daughter also might well have been viewed as a material change of circumstances. There was another potential material change when the youngest children were uprooted from Mother's home, and sent to live in Sheridan County with Father's new wife, the parties' two other children, and Stepmother's three children. There was likely a material change of circumstance when all four children were taken from their home and placed in DFS custody (in a group home) as a result of Stepmother's abusive acts against the children. There were potential material changes of circumstance when the children were placed in the custody of Father's mother and stepfather, and when Father was finally accorded full custody again, with his mother and stepfather providing a backup for Father. *JRS*, ¶ 12, 90 P.3d at 723–24.

[¶ 47] *JRS* is distinguishable from the present case. In *JRS*, the changes, such as the children's exposure to abusive persons, were not isolated and remote, but were continuing concerns. *JRS*, ¶ 12, 90 P.3d at 723–24. Moreover, the parties had a shared custody arrangement that had become unworkable with the mother's relocation. *Id.*

[¶ 48] Father's request for a custody modification in this case, on the other hand, more closely resembles the request we reviewed in *Morris*, presenting more of a generalized attack on Mother's judgment and quality as a parent than a genuine material change of circumstances. In *Morris*, the father petitioned for a modification of custody citing grounds such as the mother's frequent moves, the mother's numerous romantic relationships, the mother's inattention to the children's hygiene, and the mother's leaving of the children in the care of others too

often. *Morris*, ¶¶ 17–24, 170 P.3d at 91–93. We upheld the district court's denial of a custody modification, observing:

> Much of Father's case focused on proving he was a better parent than Mother. His arguments would have been appropriate in an initial custody determination. However, the standard is different in a modification proceeding because changes in custody are not favored and should not be granted except in clear cases. *See, e.g., Leitner v. Lonabaugh*, 402 P.2d 713, 718–19 (Wyo.1965). As we said in *CLH*, ¶ 9, 129 P.3d at 877: "Under the principles of res judicata, a court does not have the discretion to reopen a custody order simply because, looking at the best interests of the child, it believes it can make a better decision than was made in the prior custody order." Father, thus, had the burden of establishing a material change of circumstances before the best interest analysis was appropriate. *Id.*, ¶ 11, 129 P.3d at 877. *See also, Selvey v. Selvey*, 2004 WY 166, ¶ 16, 102 P.3d 210, 214–15 (Wyo.2004). On this record, we hold the district court could have reasonably concluded Father failed to establish a material change of circumstances. Consequently, it did not abuse its discretion by denying Father's request for a change of custody.

*Morris*, ¶ 27, 170 P.3d at 93.

[¶ 49] The Guardian Ad Litem (GAL) appointed in this case advised the district court that she found CJH to be a happy, content, well cared for, and intelligent child who understands the relationships between and among CJH, CJH's mother, CJH's father, CJH's siblings and CJH's stepfather. She also testified that both Mother and Father are good parents and she was not alarmed by anything in the parenting of either party. A concern repeatedly cited by the GAL was the impact of splitting CJH from his half-siblings, that is Mother's two children from separate fathers. She advised the district court:

> I weigh very heavily and I think all courts weigh heavily the relationship between the child in question today, [CJH], and his half-brothers.... [CJH], for his three almost four years has lived with J., his al-

most five-year-old brother, and for almost a year now little [CJH] has lived with his almost one-year-old brother K.

* * * *

... I just haven't heard anything alone that worries me, troubles me as much as what do we do about half-siblings living 14 hours apart.

[¶ 50] The district court found that Father had failed to prove a material change of circumstances since entry of the parties' divorce decree. With respect to changing CJH's family unit, the district court more particularly found that Father "failed to prove factors sufficient to justify 'splitting' custody with [CJH]'s older (half-blood) sibling and [CJH]'s younger (half-blood) sibling."

[¶ 51] We find no clear error in the district court's determination that Father did not prove a material change in circumstances that would justify a custody modification. Because Father did not prove a material change of circumstances, we need not consider whether a modification would be in the child's best interest. *See TLJ*, ¶ 8, 129 P.3d at 876 (court will not address the best interests test unless and until a material change of circumstances is shown).

### B. *Alleged Errors in Evidentiary Rulings*

### 1. *Mother's Testimony as to Statements by Allergist*

[¶ 52] Mother testified that the allergist recommended that cats not be permitted to sleep in CJH's room, but otherwise he was not concerned with removing pets from the home. The district court admitted this testimony over Father's objection, ruling that it was excepted from the hearsay rule under W.R.E. 803(4) as a statement made for the purpose of medical diagnosis or treatment. Father appeals the evidentiary ruling.

[¶ 53] We agree that the district court erred in admitting Mother's testimony concerning the allergist's statements. W.R.E. 803(4) applies only to statements made by the person seeking medical treatment and not to statements made by the person providing medical care. *Field v. Trigg County Hosp., Inc.*, 386 F.3d 729, 735–

36 (6th Cir.2004); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996). Nonetheless, as we noted above, Father did not meet his burden of showing that Mother's keeping of pets in the home and giving CJH allergy medications was a material change of circumstances detrimental to CJH. Father questioned Mother's actions, but he presented no evidence concerning CJH's allergies or any consequences to CJH as a result of Mother's decisions. Thus, even if the statements attributed to the allergist are excluded, the record supports the district court's decision, and the admission of the testimony was harmless.

### 2. *Exclusion of Criminal Record of Mother's Current Husband*

[¶ 54] The district court allowed testimony concerning the criminal history of Mother's current husband, but excluded certain of the records. Father's attorney argued to the district court for the admission of these records on the following ground:

[M]y purpose for offering them is that the witness had a total disregard of what her boyfriend, then fiancé, then husband's criminal background was even up to the point of last December, although she was leaving my client's young son in the care of this man. That's my purpose, your Honor.

[¶ 55] In response, the district court explained its decision to exclude the criminal records:

Here's where I see the disconnect and this is specific to the admission of these documents as exhibits. The disconnect is that a witness, the Respondent, has testified to the extent of her knowledge of her husband's back—criminal background. She has told us she knows about speeding tickets, she told us she knows about a conviction or an arrest for drug paraphernalia, she has told us about open container, she has told us she knows something about a drunk driving and a conviction where he was on supervised probation.

[¶ 56] The record thus shows that when Father offered the documented criminal record of Mother's current husband into evidence, there had already been testimony

concerning much of that husband's criminal conduct and history. Moreover, Mother testified, "I knew of a criminal record, but I didn't exactly know the details of it." Father's attorney argued for the admission of the record to show what Mother had failed to properly consider and understand her husband's criminal history before leaving CJH in his care. Father's attorney repeated this in closing argument, stating that it was not necessarily the nature of the husband's criminal conduct that was important, but Mother's poor judgment in not inquiring into the details of that history. Given that Father was permitted to establish that Mother's husband had a criminal history and that Mother had not questioned or looked into that history, we can see no possible harm to Father's case in the exclusion of the written record itself.

[¶ 57] Father was permitted the opportunity to submit the evidence he needed to support his argument that the current husband's criminal background and Mother's failure to research that background was a material change in circumstances. Where the district court found that Father had failed in his proof was in presenting any evidence that Mother's "current spouse has ever jeopardized the safety and well-being of [CJH] when the child is left in his care." Father has not shown that having the current spouse's documented criminal record would have altered the district court's ultimate finding, and the exclusion of the evidence was thus harmless, if indeed it was error.

## C. *Award of Attorney's Fees and Costs to Mother*

[¶ 58] The district court awarded Mother $4,680.00 in attorney fees and costs. On appeal, Father does not challenge the reasonableness of this award, but instead argues the award was improper because: 1) Mother was in the wrong and was responsible for circumstances that "literally shock the conscience as to their impact on the safety of a three year old child;" and 2) the award was necessarily arbitrary because there are no statutory or common law factors guiding a district court's discretion in determining whether an award of fees and costs is necessary to enable the defending party to carry on or defend the action.

[¶ 59] Wyo. Stat. Ann. § 20–2–111 (LexisNexis 2011) authorizes a court in this type of proceeding to "require either party to pay any sum necessary to enable the other to carry on or defend the action[.]" This Court has interpreted this provision, and in particular the term "necessary," as follows:

> The award of attorney's fees in cases such as this is not designed to punish one party or the other, it is only designed to allow for the payment of such attorney's fees, within the sound discretion of the district court, in those circumstances where the expenditures become "necessary" for a party because that party has no choice but to incur the expenses in defending against, or pursuing, a complaint for divorce. In such cases a party does not act voluntarily to incur rather large attorney's fees such as those at issue here, but rather because such expenditures are made essential given the circumstances.

*McMurry v. McMurry*, 2010 WY 163, ¶ 19, 245 P.3d 316, 322 (Wyo.2010).

[¶ 60] As also noted in our decision in *McMurry*, our definition of judicial discretion is longstanding and provides the standard against which we will measure a district court's exercise of its discretion.

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*McMurry*, ¶ 19, 245 P.3d at 322 (quoting *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998)).

[¶ 61] With respect to Father's first argument against the district court's award of fees and costs, Father did not prove a material change of circumstances detrimental to the interests of CJH. The GAL found no behavior on the part of Mother that would shock the court's conscience, and the district court likewise found no such behavior. We have upheld the district court's determination, and we thus reject Father's first argu-

ment that the award was unjustified because the modification proceeding was Mother's fault.

[¶ 62] With respect to the district court's exercise of discretion in awarding fees, we believe our precedent is clear and provides sufficient guidance to determine whether a court has abused its discretion with an award of fees. In this case, Father made the decision to file a petition to modify custody, and Mother was required to defend against that petition. The district court awarded only those costs it determined were necessarily incurred in defending against the petition, and we find no abuse of discretion in the award.[1]

## CONCLUSION

[¶ 63] The clause in the parties' divorce decree providing that either parties' relocation outside Wyoming would constitute a material change of circumstances justifying consideration of custody modification was invalid as speculative, and the district court properly disregarded the provision. We further find Father was not prejudiced by the appealed evidentiary rulings, and we find no clear error in the court's determination that Father had not proven a material change of circumstances warranting a custody modification. Finally, the district court did not abuse its discretion in its award of attorney's fees and costs. Affirmed.

---

1. We are not persuaded by Father's argument that the parties' relocation stipulation should preclude an award of fees in this case. Father continued with his petition after the district court found the relocation stipulation alone was not sufficient for the court to find a material change of circumstance, after Mother disputed the validity of the relocation provision, and after Mother returned to Wyoming. It is simply untenable that Father continued pursuit of his petition based on a perceived agreement between the parties that modification was in order.