BURKE, Chief Justice,
dissenting, with whom DAVIS, Justice, joins.
[¶ 34] I respectfully dissent. The evidence when viewed in the light most favorable to Father establishes that at the time of the divorce, Mother lived in Lingle and was employed in a job that she had held for many years. She had medical insurance that provided coverage for GK. There was no indication that Mother would be fired from that job for misconduct. She was required to consult with Father regarding all major decisions involving the general welfare of the child. She was specifically required to discuss schools the minor child would attend and was obligated to advise Father prior to any move from Lingle.
[¶ 35] Since the divorce, Mother was fired from her longtime job at Wyrulee for stealing from a co-worker. She was convicted of that crime by a jury who apparently did not believe her version of events. She remains unemployed and her child support obligation is now calculated as if she is a minimum wage earner. She no longer has healthcare coverage for her daughter. Mother moved from Lingle to Denver and enrolled the minor child in school in Denver without telling Father, all in violation of her duties as the custodial parent under the terms of the decree.
[¶ 36] After the district court awarded temporary custody to Father, Mother moved back to Lingle on the advice of counsel and enrolled as a full-time student at Eastern Wyoming College. Within a month, she dropped out and returned to Denver to live with her boyfriend. She married her boyfriend four days prior to trial.
[¶ 37] In determining that there was a material change in cireamstances, the district court concluded, "The Plaintiff's conviction for larceny, her loss of employment, her relationship with Mr. Milner, her recent marriage 'and her move to and from and to Denver, add up to a material change in cir *387 cumstances." The district court also found that Mother's actions demonstrated "a lack of judgment and personal stability" and that Father "appears to have better judgment and stability." All of the district court's factual determinations are supported by the evidence.
[¶ 38] In conducting its analysis, the majority finds that each separate piece of evidence does not constitute a change of circumstances. For example, the majority concludes that Mother's conviction "alone, is not enough to demonstrate that a material change in cireumstances occurred affecting the welfare of the child." Similarly, the majority takes an individualized approach to Mother's loss of employment, her recent marriage, her relationship with other men, and the relocation to Denver. The majority, however, never questions the district court's conclusion that those factors when combined indicate "a lack of judgment and personal stability" on behalf of Mother.
[¶ 39] In conducting our appellate review, we are not supposed to reweigh the evidence. But, that is what the majority has done. Instead of granting all favorable evidentiary inferences to Father, as we are required to do, the majority gives Mother the benefit of the doubt. The majority discounts or ignores Mother's failure to provide notice to Father of her move to Denver and the enrollment of GK in a Denver school. The majority treats the marriage to Mr. Kato as a sign of financial stability (they will "pool their financial resources") without mentioning that the marriage was only four days old at the time of the custody hearing. The majority treats Mother's conviction merely as a "misdemeanor" rather than "larceny, a crime involving dishonesty" as did the district court.
[¶ 40] Additionally, the precedent relied upon by the majority must be placed in context. Properly viewed, that precedent supports affirmance of the district court's decision. In nearly every custody modification case cited by the majority, we applied our standard of review, found no abuse of discretion, and deferred to the district court's decision. In the two cases where we did not defer, we reversed the district court's finding that no material change in cireumstances had occurred and remanded for a determination that was in the best interest of the children. Arnott, 293 P.3d 440; JRS, 90 P.3d 718.
[¶ 41] -It is not enough to simply state the applicable standard of review. We must apply it. The majority recognizes that in determining whether a material change in circumstances has occurred we must give "great deference" to the district court. Here, the majority fails to give any deference, let alone great deference. In this case, the district court could reasonably conclude that a material change in cireumstances had occurred. Our standard of review requires us to defer to the district court. I would affirm the decision to modify custody.