2004 WY 99

**Misty Schanell JACKSON, Appellant (Plaintiff/Respondent),**

v.

**Kevin Wayne JACKSON, Appellee (Defendant/Petitioner).**

No. 03-220.

Supreme Court of Wyoming.

Aug. 26, 2004.

Representing Appellant: Laurie Brooke Seidenberg of Seidenberg Law Office, Laramie, Wyoming.

Representing Appellee: Tony S. Lopez, Laramie, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Alleging a material change of circumstances, Kevin Jackson filed a petition for modification of a custody order which granted his former wife, Misty Jackson, primary physical custody of their two children. The district court granted the petition and awarded Mr. Jackson primary physical custody of the children because he had substantially improved his life and had become more stable, whereas Ms. Jackson had not. Ms. Jackson appeals the order, and we affirm.

## ISSUES

[¶ 2] The parties agree that the issues presented are as follows:

1. Did the trial court abuse its discretion when it found that a material change in circumstances had occurred despite the lack of significant or compelling evidence to support that finding?

2. Did the court abuse its discretion when it found that it would be in the best

interests of the children to award custody to father?

3. Did the trial court abuse its discretion when it failed to consider the evidence of spousal abuse presented to it, and when it failed to make arrangements for the children that best protected the children from further harm, as mandated by Wyoming Statute, § 20–2–201(c)?

## FACTS

[¶ 3] Kevin and Misty Jackson were married on December 11, 1999, in Las Vegas, Nevada, and divorced on November 7, 2000, in Laramie, Wyoming. The couple has two children together, a girl born on January 2, 1998, and a boy born on June 16, 2000. The divorce decree ordered joint custody and awarded primary physical custody of the children to Ms. Jackson. The court granted Mr. Jackson reasonable visitation and ordered him to pay child support.

[¶ 4] Despite their divorce, the Jacksons continued to live together until June 2002. However, their relationship during that time remained troubled. In August 2001, Ms. Jackson filed a petition for a restraining order against Mr. Jackson pursuant to the Family Violence Protection Act after Mr. Jackson attacked a man with whom she had been dancing in a bar. No hearing was held. However, a stipulated order was to be prepared by Father's attorney and submitted to the court. An order was never entered, but both parties testified they believed one was in effect and acted accordingly. Ultimately, the couple reunited and moved to Wendover, Nevada in October 2001 to "start over." While in Wendover, Ms. Jackson worked as a waitress and Mr. Jackson worked for a cable company. However, in June 2002, in what would be their final separation, Ms. Jackson and the children moved back to Laramie, while Mr. Jackson remained in Wendover.

Ms. Jackson lived with her parents in their home, together with her brother and sister-in-law.

[¶ 5] From September to December 2002, Ms. Jackson changed jobs five times. In February 2003, after being unemployed for over two months, she enrolled in cosmetology school. She left that program, and enrolled in a different school a few months later. While Ms. Jackson was at school, the children attended daycare. Mr. Jackson remained in Wendover and continued working for the cable company. He made significant improvements in his lifestyle including quitting drinking, smoking, and chewing and ending his association with "bad influences." He received a promotion at work and was able to provide health insurance for the children. He also developed a stable relationship with a woman whom he ultimately married less than two weeks before the hearing on his petition for modification of custody.

[¶ 6] In January 2003, Mr. Jackson filed a petition for modification of custody and support alleging it was in the best interests of the children that he be granted primary physical custody of them. Ms. Jackson filed an answer and counterclaim requesting that the court dismiss Mr. Jackson's petition and increase his child support obligation.[1] At a hearing on June 13, 2003, the district court heard testimony from both parties, as well as their friends and family. The district court issued its decision letter on July 1, 2003, finding "a change of circumstances sufficient to warrant modification of custody and support and that such modification is in the best interests of the minor children." Ms. Jackson timely filed this appeal.

## STANDARD OF REVIEW

[¶ 7] In custody matters, the welfare and needs of the children must be given paramount consideration. We recently stat-

---

1. Before the court could rule on Mr. Jackson's petition for modification and Ms. Jackson's counterclaim, Mr. Jackson filed a motion entitled, "Ex–Parte Application for Temporary Custody," with an affidavit alleging that Ms. Jackson may have sexually abused their daughter. On March 26, 2003, the court entered an order awarding Mr. Jackson temporary custody of the children. Ms. Jackson filed a response denying the allegations and seeking to vacate the order because it had been granted without notice or a hearing. After attending counseling sessions with their daughter, the parties stipulated to vacate the order awarding temporary custody to Mr. Jackson.

ed our standard of review in *JRS v. GMS,* 2004 WY 60, ¶ 10, 90 P.3d 718, ¶ 10 (Wyo. 2004) (some citations omitted):

That which is in the best interests of the child is a question for the trier of fact, and we will not overturn the decision of a trial court unless we are persuaded that an abuse of discretion is present or that there has been a violation of some legal principle. *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo.1998). When we are asked to review the action of a district court, in the context of the abuse of discretion standard, the core of the inquiry we must make is the question of the reasonableness of the choice made by the trial court. Judicial discretion is a composite of many things. Among these are conclusions drawn from objective criteria. It means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. We must ask whether or not the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. The party seeking to modify established child custody provisions of a divorce decree has the burden of showing that a material change in circumstances that affects the child's welfare occurred subsequent to the entry of the initial decree, that the change warrants modification of the decree, and that the modification will be in the best interests of the affected child.

## DISCUSSION

■ [¶ 8] Ms. Jackson argues the district court abused its discretion when it found that a material change in circumstances had occurred and that it would be in the best interests of the children to award primary physical custody to Mr. Jackson. She also claims the court erred when it failed to consider evidence of spousal abuse in making its determination. This Court has prescribed the following test to be applied in such situations:

A party who is seeking to modify the child custody provisions of a divorce decree has the burden of showing that a substantial or material change in circumstances, which

affects the child's welfare, occurred subsequent to the entry of the initial decree, that the change warrants modification of the decree, and that the modification will be in the child's best interests.

*Cobb v. Cobb,* 2 P.3d 578, 579 (Wyo.2000) (citations omitted). Wyo. Stat. Ann. § 20–2–201(a) (LexisNexis) sets forth the factors the court must consider in making custody determinations. The statute states the court shall consider, but is not limited to, the following factors:

. . .

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

[¶ 9] The district court found "that there has been a change of circumstances sufficient to warrant modification of custody and support and that such modification is in the best

interests of the minor children of the parties." The court found there was no real change in Ms. Jackson's circumstances, citing she "continues to live with her parents, and they continue to provide for her and her children. She has been through numerous jobs, none of which have worked out .... there is no prospect of employment for at least another year. She continues to prowl the bars at least two nights each week, sometimes more, while her parents look after the children." On the other hand, the court found "significant" changes in Mr. Jackson's circumstances, including: regular employment for over 18 months, financial responsibility for himself and his children, and lifestyle changes which enhanced his ability to parent his children. The court found, "None of these changes have been of long-standing duration and none of them would be sufficient, standing alone, to justify a finding that there has been a significant change in circumstance." Yet, the court concluded the combined changes were significant enough to warrant custody modification.

### Change in Circumstances

[¶ 10] In considering requests for custody modification, the courts are usually faced with changes in circumstances that cause the custodial parent's situation to deteriorate in some way to the detriment of the children. However, in some cases neither parent deteriorates, but one parent improves substantially, while the other does not. In *Thompson v. Thompson*, 824 P.2d 557 (Wyo.1992), this Court faced such circumstances and, affirming the district court's grant of the mother's petition for modification, we held:

> The evidence is not that the father had slipped backward, but, rather, the mother had surged far ahead in her personal development and ability to serve as a parent.... The father essentially contended that, because he has "maintained" as a fit parent, no change in custody could be made. We do not agree. When a court has found the existence of substantial change which warrants a revision in custo-

dy that serves the best interests of the children, we will not disturb that decision absent some serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion.

The court reasoned that "[Mother] was treating her addictions with therapy and regular attendance at meetings of Alcoholics Anonymous. She was working and could provide health insurance for the children. She was planning to marry in the near future. She had been working in law enforcement and planned to relocate to Lusk, Wyoming, to work at the Wyoming Women's Center." *Id.* Father, on the other hand, had discontinued use of alcohol and drugs, but was "seemingly unaware of the prognosis for those who have been addicted to drugs, or for those who have grown up in a home where addiction is a fact of life." The court acknowledged that father had suitably provided for his children during the time he had them in his custody, but indicated he continued to "harbor the bitterness, resentment and rationalization that so frequently dwell with those who have left addiction untreated."

[¶ 11] The facts of the case before us resemble those in *Thompson*. Mr. Jackson progressed, while Ms. Jackson "maintained." Mr. Jackson had been regularly employed for over 18 months; however, in the course of less than five months, Ms. Jackson switched jobs five times, enrolled in beauty school, quit, and then enrolled in another beauty school, never achieving a stable source of income. Mr. Jackson provided health insurance for the children, which the divorce degree required of him in the event that Ms. Jackson could not. Mr. Jackson also stopped smoking, drinking and chewing, while Ms. Jackson "partied" at least two, sometimes four, times a week. Mr. Jackson married his girlfriend of six months, albeit one week before the modification hearing, and established a household with her and his two children while Ms. Jackson continually relied on her parents for housing and support.[2]

2. We do note that the improvements in Mr. Jackson's lifestyle were recent and not sustained over a substantial period of time. It is not in the best interests of children to alter custody arrangements frequently and it is imperative that district courts be satisfied that such changes in the parents' relative circumstances be of such a nature that they will continue over time and not result

[¶ 12] Although the district court found none of these factors alone would amount to a change in circumstances, together they constituted a material change. We have recognized that courts must consider all of the circumstances together in determining whether a material change has occurred. *JRS,* ¶ 12. As one treatise states:

> The consideration and weighing of the factors in a custody dispute is essentially factual.... Cases with very similar facts may be decided in divergent ways by courts of different states, and even by courts within the same state. The differing results often come from the hearts and emotions of judges, rather than from the facts of the case.

Jeff Atkinson, *Modern Child Custody Practice,* Vol. 1, § 4.1 (Lexis 2003). Certainly, the district court was in a much better position to weigh and judge the credibility of the witnesses than we are. *Produit v. Produit,* 2001 WY 123, ¶ 22, 35 P.3d 1240, ¶ 22 (Wyo. 2001). Our review of the record discloses a careful, thoughtful analysis by the district court and we discern no abuse of discretion in its conclusion that a material change in circumstances had occurred.

### Best Interests of the Children

[¶ 13] A material change of circumstances does not automatically equate with a change in custody, however. Custody must be arranged so as to be in the best interests of the child(ren) on an individualized basis. *JRS,* ¶ 13. The core of the inquiry must reach the question of reasonableness of the choice made by the district court. *Fergusson v. Fergusson,* 2002 WY 66, ¶ 9, 45 P.3d 641, ¶ 9 (Wyo.2002).

[¶ 14] Ms. Jackson argues that the district court was unreasonable in finding it was in the children's best interests to award Mr. Jackson custody claiming it did not consider

the required statutory factors. While she admits the court's decision letter lists the nine required factors set out in § 20–2–201(a), she complains that the court only specifically addressed the "stability of the parents" factor.

[¶ 15] As we stated in *Fergusson,* while § 20–2–201(a) does not specifically require *findings* as to the various factors, the statute does direct the court to *consider* those factors in ordering the disposition of children. *Fergusson,* ¶ 16. "On appeal, this court can ascertain whether the factors have been appropriately weighed only if the district court's consideration is reflected in the proceeding transcripts, by opinion letter, or as findings in the written order." *Id.* Thus, this Court may look beyond the district court's written decision to the hearing transcript in determining whether the court considered the required factors in compliance with § 20–2–201(a). In this case, the transcript evidences the district court fulfilled its responsibility to weigh all of the statutory factors to determine what was in the children's best interests. The court explained its role stating:

> I do want to make one thing clear. The purpose of a hearing like this today, and what the Court is charged with the responsibility of doing here, is not choosing which of you is the better parent. I don't doubt that both of you love your kids. I don't question that at all. It is the Court's responsibility, like it or not, to decide without regard to what you want (pointing) and without regard to what you want (pointing), and fortunately or unfortunately, what grandparents want doesn't count, isn't considered, to decide what is best for the children in this case, and to do that based on what I've heard today, because I

in continual "back and forth" modifications of custody depending on which parent happens to be doing better at the time a petition to modify is filed. This consideration is especially important in situations where no emergency exists and the changes relate to one parent's improvement in comparison to the other "maintaining." The Uniform Marriage and Divorce Act, which many states have adopted, addresses this issue by requiring a two-year waiting period before custody

can be modified unless an emergency exists. Changes in primary custody, or repeated petitions to change it, are not good for the child and ought to be discouraged in the absence of some reasonably compelling story. Braver, Sanford, Ellman, Fabricious, *Relocation of Children after Divorce and Children's Best Interests: New Evidence and Legal Considerations,* Journal of Family Psychology, 2003 Vol. 17, No. 2, 209, n. 5.

don't know either one of you. I don't favor either one of you.

[¶ 16] Each case requires the district court to carefully weigh the relevant factors while looking to the unique and individual family relationships in reaching a resolution that is in the best interests of the children in that family. *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo.1998). In this case, the district court heard testimony that Ms. Jackson, upon moving back to Laramie, moved in with her parents, and relied completely on them for support. The court also heard testimony that indicated the grandparents are the children's parents. Other testimony included accounts of Ms. Jackson's propensity to party and drive drunk with her children in the car. On the other hand, the court heard testimony about the increasing stability of Mr. Jackson's life including his job security, his avoidance of harmful substances, and his stable relationship. The district court's decision letter stated "[Mr. Jackson] has shown himself capable of providing a stable, nurturing and responsible home without the aid or interference of relatives. Ms. Jackson has not." We are persuaded the court considered the factors in § 20–2–201(a), and its reasoning is adequately reflected in the record. Therefore, the district court's decision that it would be in the children's best interests to be in their father's custody was not an abuse of discretion.

### Evidence of Spousal Abuse

[¶ 17] In her final argument, Ms. Jackson asserts the district court abused its discretion when it failed to consider evidence of spousal abuse, which Ms. Jackson alleged her former husband had committed against her, as contrary to the best interests of the children as required by § 20–2–201(c) which provides:

> The court *shall* consider evidence of spousal abuse or child abuse as being contrary to the best interest of the children. If the court finds that family violence has occurred, the court shall make arrangements for visitation that best protects the children and the abused spouse from further harm.

(emphasis added). In no way does this Court minimize domestic violence and its effects on those involved. We are especially aware of the negative effects domestic violence and spousal abuse can have on children. Having said that, however, the record before us does not establish clear incidences of spousal abuse for the district court to consider. Rather, the record indicates Mr. Jackson assaulted one of Ms. Jackson's companions, and both parties perpetrated abuse on each other.

[¶ 18] For instance, Ms. Jackson testified that the first time the police were called to address altercations between her and her husband, Mr. Jackson "pushed me in the car," after which she "grabbed him by the throat." Then Mr. Jackson "grabbed me by the hair and shook me up by the car" and pushed her through a fence. Mr. Jackson, however, testified that he never "touched [Ms. Jackson] unless she's physically assaulted [him] first." Ms. Jackson also testified that Mr. Jackson "headbutted" her in the face. However, Mr. Jackson's sister, Misty Browning, who witnessed the "headbutting" incident, testified that "[m]y brother was sitting on the couch. [Ms. Jackson] was standing directly in front of him, screaming at him, cussing at him, calling him names.... She picked up the phone ... and threatened to hit him across the head with it. He went up to get away from it. He hit her in the chin with his forehead." Ms. Browning also testified that she witnessed Ms. Jackson as the aggressor against Mr. Jackson more than thirty times. Ms. Jackson called the police another time because of a confrontation she described as "basically just a verbal [incident]."

[¶ 19] While it is clear from the record that the Jacksons' relationship was volatile, we must defer to the district court to determine whether their actions constituted spousal abuse such that it should impact the court's custody evaluation. Again, the trial judge is in the best position to assess the credibility of the witnesses and weigh their testimony. *Produit* ¶ 22. It appears from the record that the district court was not convinced of any clear-cut spousal abuse by Mr. Jackson and found the attacks by both parties did not rise to a level that should

impact its decision as to what was in the children's best interests. Accordingly, we hold the district court did not abuse its discretion in the manner in which it considered the conflicting testimony regarding spousal abuse.

## CONCLUSION

[¶ 20] We affirm the district court's conclusion that a change in circumstances occurred and it was in the best interests of the children to grant primary physical custody to Mr. Jackson. His efforts to improve his life personally and professionally, juxtaposed with Ms. Jackson's instability and reliance on her parents for support of her and the two children, is determinative. As the district court stated, both could be suitable parents, however, it is in the children's best interests to be in the stable environment their father can provide them at this time. Under the circumstances of this case, we hold that the district court could have reasonably concluded as it did and, thus, did not abuse its discretion.