# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 3

OCTOBER TERM, A.D. 2014

**January 7, 2015**

DARLA D. KAPPEN,

Appellant
(Plaintiff),

v.

S-14-0092

JIM R. KAPPEN,

Appellee
(Defendant).

*Appeal from the District Court of Goshen County*
*The Honorable Keith G. Kautz, Judge*

*Representing Appellant:*
Guy P. Cleveland, Cleveland Law, Cheyenne, Wyoming.

*Representing Appellee:*
Herbert K. Doby, Torrington, Wyoming.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

*FOX, J., delivers the opinion of the Court; BURKE, C.J., files a dissenting opinion, in which DAVIS, J., joins; DAVIS, J., files a dissenting opinion, in which BURKE, C.J., joins.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Father, Jim R. Kappen, petitioned for custody modification transferring primary custody of the parties' youngest daughter, GK, to him.  Mother, Darla D. Kappen, opposed the modification, and after a trial on the merits, the district court found that a material change in circumstances had occurred since the entry of the original custody order, and that it was in the best interests of GK for Father to become her primary custodian.  Mother appealed and we reverse.

## *ISSUE*

[¶2]    Mother raises only one issue on appeal, which we restate as:

1.    Was there a material change in circumstances warranting the district court's reopening of the existing custody order?

## *FACTS*

[¶3]    The parties were divorced on February 9, 2010.  The district court determined that Mother should have primary physical and legal custody of the children,[1] and Father was given standard visitation—every other weekend, sixty days during the summers, and alternating holidays.  After the divorce, both parties continued to live in Lingle, Wyoming, though Father spent and continues to spend a great deal of his time in Bayard, Nebraska, sixty-five miles from Lingle.  Mother worked at Wyrulec, a job she had held for many years.  In January 2013, Mother was cited for stealing a fellow employee's cell phone.  She contested the citation, but was convicted by a jury of a misdemeanor.  Wyrulec terminated Mother's employment as a result of the incident.  At the time of the hearing, Mother remained unemployed.  Despite her loss of employment, Mother remained financially secure as a result of substantial savings she had amassed over time.[2]

[¶4]    In the spring of 2013, Mother began planning a move to Denver with GK to live with her then boyfriend, Garrett Kato, whom Mother later married.  Mother placed her home on the market in May 2013, but did not discuss her planned move with Father.  On July 16, 2013, while GK was in Father's custody for summer visitation, Father filed a petition to modify custody alleging that a material change in circumstances had occurred as Mother was providing an unstable environment for GK.

---

[1] At the time of the divorce, the parties had two minor children, but when Father filed the petition to modify custody, one of the children had reached the age of majority.  Thus, the only child at issue in the modification proceeding was GK.

[2] Mother received additional financial security by pooling her resources with her new husband, Garrett Kato.

1

[¶5]    Father returned GK to Mother's custody on July 31, 2013.  Mother and GK then moved to Denver and Mother enrolled GK in school there.  In accordance with the Decree of Divorce which required the parties to "provide the other party with immediate notice of any change of address[,]" Mother filed a Report of Address to inform the district court and Father of her move on August 2, 2013.  Father testified at trial that this was the first time he definitively knew that Mother and GK had moved to Denver, though he had "suspicions" of the move for some time.

[¶6]    On August 8, 2013, Father filed a motion requesting that the district court prohibit GK's move out of Wyoming.  Mother answered and the district court held a hearing soon after.  The district court found that it was in the best interests of GK to remain in Lingle during the pendency of the proceedings, and awarded Father temporary custody of GK, pending a hearing on the merits.  Mother was awarded standard visitation during the period of temporary custody with Father.

[¶7]    After the district court entered its order awarding temporary custody to Father, Mother moved back to Lingle for a short time, hoping that the move would reflect positively on her at the modification hearing.  Mother soon realized, however, that returning to Lingle had been a mistake, and she moved back to Denver, where she was living at the time of the modification hearing.

[¶8]    The district court held a hearing on Father's petition to modify custody on November 25, 2013.  It then issued its Order Modifying Child Custody, Child Support and Visitation, stating:

> 5.   The Court recognizes that modification of a child custody and child visitation order is conditioned upon a finding of a material change in circumstances affecting the child's welfare which has occurred after entry of the order in question, that the change warrants modification of the order, and that the modification will be in the best interests of the child.
>
> 6.   There has been a material change in circumstances affecting the child's welfare sufficient to warrant modification of the Court's February 9, 2010 Decree of Divorce regarding child custody, child support and visitation as follows:
>
> > i.   In January 2013, [Mother] was fired from her employment for stealing from a co-worker, subsequently convicted of larceny in the Goshen County Circuit Court, maintained a relationship with Mr. Milner, was recently married to Mr. Kato, and in a short period of time moved

2

to and from and then back to Denver. [Mother] is not now employed and lives in Denver with her current husband. All of this adds up to a material change in circumstances.

ii. The Court concludes that while the minor child has a good relationship with both parents, [Mother's] actions indicate a lack of judgment and personal stability and [Father] can provide a more stable environment for the minor child.

[¶9] Mother appealed.

## STANDARD OF REVIEW

[¶10] Decisions affecting child custody rest within the sound discretion of the district court. *CLH v. MMJ (In re TLJ)*, 2006 WY 28, ¶ 6, 129 P.3d 874, 876 (Wyo. 2006). We will not disturb the district court's findings "absent procedural error or a clear abuse of discretion." *Id.* (citing *Selvey v. Selvey*, 2004 WY 166, ¶ 15, 102 P.3d 210, 214 (Wyo. 2004)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." *Id.* (quoting *Fergusson v. Fergusson*, 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo. 2002)). Our primary goal in reviewing for an abuse of discretion is determining whether the district court's decision is reasonable. *Id.* (citing *Selvey*, 2004 WY 166, ¶ 15, 102 P.3d at 214). "We view the evidence in the light most favorable to the district court's determination, affording to the prevailing party every favorable inference and omitting from our consideration conflicting evidence." *Id.* (citing *Selvey*, 2004 WY 166, ¶ 15, 102 P.3d at 214).

[¶11] In custody modification proceedings, the party seeking to modify custody carries the burden of establishing that a material change in circumstances affecting the child's welfare has occurred subsequent to the entry of the initial decree, and that the modification would be in the best interests of the child affected. *Jackson v. Jackson*, 2004 WY 99, ¶ 7, 96 P.3d 21, 24 (Wyo. 2004). "A district court's findings concerning a material change in circumstances is principally a factual determination to which we accord great deference." *Morris v. Morris*, 2007 WY 174, ¶ 7, 170 P.3d 86, 89 (Wyo. 2007) (quoting *In re TLJ*, 2006 WY 28, ¶ 11, 129 P.3d at 877). "Our task is simply to determine whether, examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did." *Walker v. Walker*, 2013 WY 132, ¶ 21, 311 P.3d 170, 175 (Wyo. 2013) (quoting *Hanson v. Belveal*, 2012 WY 98, ¶ 13, 280 P.3d 1186, 1192 (Wyo. 2012)).

*DISCUSSION*

[¶12] Generally, child custody orders are subject to the doctrine of res judicata, barring relitigation of issues presented[3] and decided in a previous proceeding. *Arnott v. Arnott*, 2012 WY 167, ¶ 13, 293 P.3d 440, 444 (Wyo. 2012) (citing *Mentock v. Mentock*, 638 P.2d 156, 158 (Wyo. 1981) ([R]es judicata provides an endpoint to litigation and prevents the legal system from becoming "so bogged down that nothing would ever remain decided.")). We have recognized, however, that in the context of modifying child custody, the application of res judicata may be inappropriate in some circumstances. *Id.* at ¶ 13, 293 P.3d at 444-45. New issues and facts may create a material change in circumstances, thus mandating a new adjudication of the parties' rights. *Id.* at ¶ 13, 293 P.3d at 445. However, because "stability in a child's environment is of utmost importance to the child's well-being," *Reavis v. Reavis*, 955 P.2d 428, 432 (Wyo. 1998), "changes in custody are not favored and should not be granted except in clear cases." *Morris*, 2007 WY 174, ¶ 27, 170 P.3d at 93.

[¶13] The doctrine of res judicata "has been functionally incorporated as a threshold inquiry under Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 20[13])." *Arnott*, 2012 WY 167, ¶ 14, 293 P.3d at 445. Section 20-2-204(c) states, in pertinent part:

> A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a).[4]

[¶14] Accordingly, a district court cannot reopen an existing custody order until the moving party establishes a "material change of circumstances which outweigh society's interest in applying the doctrine of res judicata[.]" *In re TLJ*, 2006 WY 28, ¶ 8, 129 P.3d at 876 (quoting *Kreuter v. Kreuter*, 728 P.2d 1129, 1130 (Wyo. 1986)). The district court cannot consider the best interest factors set forth in Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2013) unless and until it has determined that a material change in circumstances has occurred. *Id.*

[¶15] In examining whether there is a material change in circumstances, we have required district courts to establish that the change has, in some way, affected the welfare of the child. *Hanson*, 2012 WY 98, ¶ 19, 280 P.3d at 1193; *Morris*, 2007 WY 174, ¶ 6,

---

[3] Res judicata "is not strictly limited to issues actually presented, but also encompasses those issues that *could* have been brought in an earlier proceeding, but were omitted." *Leonard v. State*, 2014 WY 128, ¶ 7, 335 P.3d 1079, 1081 (Wyo. 2014) (citing *Hamill v. State*, 948 P.2d 1356, 1358-59 (Wyo. 1997)).
[4] A best interest inquiry entails consideration and analysis of those factors set forth in Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2013).

4

170 P.3d at 89; *Jackson*, 2004 WY 99, ¶ 8, 96 P.3d at 24; *Fergusson v. Fergusson*, 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo. 2002); *Cobb v. Cobb*, 2 P.3d 578, 579-80 (Wyo. 2000); *Sorenson v. May*, 944 P.2d 429, 432 (Wyo. 1997); *Yates v. Yates*, 702 P.2d 1252, 1255 (Wyo. 1985). It is not enough for a parent seeking a modification to show only that a change has occurred, that parent must also demonstrate that the change holds some relevance in the child's life. *Id.* "[T]he test is whether the change in circumstances 'affects the child's welfare. . . .'" *KES v. CAT*, 2005 WY 29, ¶ 11, 107 P.3d 779, 782 (Wyo. 2005) (quoting *JRS v. GMS*, 2004 WY 60, ¶ 10, 90 P.3d 718, 723 (Wyo. 2004)).

[¶16] We turn to the district court's determination that a material change in circumstances warranted the reopening of the custody order in this case. Mother argues that the district court erred when it found that a material change in circumstances had occurred because Father presented no evidence that GK's welfare was affected by the changes. After a thorough review of the record, we find that Father failed to meet his burden to demonstrate a material change of circumstances. Thus, the district court abused its discretion when it reopened and modified the existing custody order.

## I. Was there a material change in circumstances warranting the district court's reopening of the existing custody order?

[¶17] The district court found an overall lack of stability in Mother's life to sustain its finding that a material change in circumstances affecting the welfare of the child had occurred. Specifically, the district court found that the termination of Mother's employment, Mother's misdemeanor conviction, Mother's relationship with a former boyfriend, Mother's marriage to Mr. Kato, and Mother's moves between Denver and Lingle created a material change in circumstances affecting GK's welfare which warranted the reopening of the existing custody order.

[¶18] Mother's counsel at the hearing on motion for temporary order stated his opinion that "a material change in circumstances always occurs when you move," and the *guardian ad litem* also indicated her view that relocation in itself results in a material change in circumstances. Those views are inconsistent with our holding in *Arnott*. There we overturned our long-standing presumption that relocation by a custodial parent cannot, in and of itself, constitute a material change in circumstances. *Arnott*, 2012 WY 167, ¶ 40, 293 P.3d at 458. We recognized that "a relocation by the primary physical custodian, as well as 'factors that are derivative of the relocation'—including 'the inherent difficulties that the increase in geographical distance between parents imposes'—*may* constitute a material change in circumstances sufficient to warrant consideration of the best interests of the children." *Id.* (emphasis added). But in *Arnott*, we rejected the application of *any* presumption to the relocation of a custodial parent, including a presumption that a relocation automatically creates a material change in circumstances. *Id.* at ¶ 38, 293 P.3d at 457 ("[P]resumptions in favor of one parent or

5

another are detrimental to the interests of all parties in cases involving modification of child custody based on relocation of a custodial parent.").

[¶19] Instead, we adopted a multi-factor test for determining whether a custodial parent's move constitutes a material change of circumstances:

> [A] change in the ability of the parties to maintain the existing parenting agreement, a change in the ability of the child[] to maintain a close relationship with the remaining parent, factors affecting the quality of life in the new location, the child's geographic preference, and the relative merits of available social and educational opportunities in the new location.

*Id.* at ¶ 39, 293 P.3d at 457-58.[5] We acknowledge that many of these factors correspond to some of those required in a best-interest analysis. *See* Wyo. Stat. Ann. § 20-2-201(a). We have also recognized, however, that in some circumstances, the factors that district courts consider in determining whether there has been a material change in circumstances "might also be relevant to an analysis of the best interests of the child." *In re TLJ*, 2006 WY 28, ¶ 10, 129 P.3d at 877.

[¶20] The move to Denver did not change the parties' ability to maintain the existing parenting agreement. Prior to being awarded temporary custody of GK, Father exercised standard visitation—every other weekend, alternating holidays, and sixty days during the summer. The parties both agreed at the modification hearing that this visitation schedule could continue after GK's move to Denver.[6] In fact, Mother exercised the same visitation when she was living in Denver and Father had temporary custody of GK in Lingle. Likewise, there would be no change in GK's ability to maintain a close relationship with Father. Father could maintain frequent visitation with GK just as he did prior to filing his petition to modify custody.

[¶21] The district court made no findings as to how GK's quality of life would be affected by her move to Denver. Undoubtedly, her lifestyle would change; however, there are advantages and disadvantages to living in either Lingle or Denver. Moreover, the record reflects that GK enjoyed a similar quality of life in Denver as she had in Lingle. She lived in a single-family home with her own bedroom; she attended school, with a similar class size, and participated in extracurricular activities. And while she moved away from a small, close-knit community, she also benefitted from additional opportunities in Denver that were not available in Lingle.

---

[5] The district court did not address any of the *Arnott* factors when it determined that Mother's move to Denver with GK contributed to its finding that there had been a material change in circumstances.
[6] The distance between Lingle and Denver is about 200 miles.

[¶22] Looking to the relative social and educational opportunities available in Denver and Lingle, the district court concluded, "[GK] will excel academically in either Denver or Lingle schools. She will have excellent opportunities at activities." The record supports this conclusion. By all accounts, GK is a very bright, happy, well-liked little girl who will be able to adapt to any situation.

[¶23] Application of the *Arnott* factors establishes that Mother's move to Denver with GK is essentially a wash. While there are some obvious benefits to growing up in a small town in Wyoming, there are also benefits that Denver provides which Lingle lacks. Father had the burden of establishing that the move constituted a material change of circumstances outweighing society's interest in applying the doctrine of res judicata. *In re TLJ*, 2006 WY 28, ¶ 8, 129 P.3d at 876. He failed to do so.

[¶24] The district court also cited Mother's move from Colorado back to Lingle, and then back to Colorado, following its entry of the temporary custody order, as evidence of a material change in circumstances. While these relocations may have amounted to a material change of circumstances in Mother's life, there was no evidence that they affected GK. The moves were made when Mother was not the primary custodian of GK, and they did not affect the visitation schedule between Mother and GK. Additionally, Mother's relocations were made in response to the district court's order awarding Father temporary custody. While GK was aware that Mother moved back to Lingle for a short period of time, there was no evidence presented that GK was affected by Mother's move.

[¶25] The district court cites to Mother's loss of employment as evidence of a material change in circumstances. While it is true that the loss of a parent's employment can cause a material change in the parent's life, we must examine whether the change affects the welfare of the child. Termination of a parent's employment may affect a child in that the parent's ability to provide for the child may suffer. That was not the case here. Father presented no evidence that Mother was unable to provide for GK. In fact, the uncontradicted testimony reflects that Mother has substantial savings to support herself and GK while she decides whether to obtain other gainful employment or return to school.[7] Moreover, the record reflects that Mother and her new husband, Mr. Kato, pool their financial resources, which provides additional financial stability for GK. Mother's loss of employment does not constitute a material change in circumstances affecting the welfare of the child.

[¶26] Mother's misdemeanor conviction was also cited by the district court as contributing to a material change in circumstances. Father testified that he was concerned about Mother's criminal conviction because "you know, [GK] at some point in

---

[7] The only testimony presented demonstrating that GK's needs were not being met due to lack of funds came from one of Mother's witnesses referencing Father's inability to provide for GK.

her life is going to know that her mother was convicted of theft." Father presented no evidence as to how this conviction affected GK prior to the modification hearing, and only provides speculation that it may affect GK in the future. This, alone, is not enough to demonstrate that a material change in circumstances occurred affecting the welfare of the child. *See Ludwig v. Burchill*, 481 N.W.2d 464, 468-69 (N.D. 1992) (upholding a district court decision refusing to modify custody despite Father's DUI conviction).

[¶27] Another contributing factor to the district court's finding of a material change in circumstances was Mother's dating during the time between the divorce and her relationship with Mr. Kato. The record reflects that Mother maintained a romantic relationship with Mr. Milner following her divorce from Father, three years prior to the modification hearing. She subsequently had occasional casual dates with other men. There is no record support for a finding that this conduct on mother's part resulted in a material change in circumstances that affected GK's welfare.

[¶28] The district court also cited Mother's marriage to Mr. Kato as evidence of a change in circumstances. We have previously stated that remarriage by one parent, standing alone, does not constitute a material change in circumstances. *Kreuter*, 728 P.2d at 1130; *see also Fergusson*, 2002 WY 66, ¶ 18, 45 P.3d at 646. When viewed independently, therefore, Mother's marriage does not amount to a material change in circumstances. We have held that remarriage combined with other factors associated with the marriage may amount to a material change. *Fergusson*, 2002 WY 66, ¶ 18, 45 P.3d at 646. In *Fergusson*, the mother remarried, and evidence was presented that the children suffered as a result of the remarriage. *Id.* at ¶ 18, 45 P.3d at 464. There was mistreatment by the stepfather, an improper touching incident between daughter and stepbrother, the children's behavior and appearances changed for the worse, and the children were withheld from their relatives by the stepfather. *Id.* We therefore upheld the district court's determination that a material change in circumstances affecting the welfare of the children had occurred. *Id.* at ¶ 19, 45 P.3d at 647. While Mother's marriage to Mr. Kato presumably has some effect on GK, no evidence was presented demonstrating that the marriage was detrimental to GK, as was the case in *Fergusson*. Evidence presented shows that Mr. Kato is gainfully employed as an engineer, he owns a home in which GK has her own bedroom, and he has a good relationship with GK. The evidence does not support a finding that Mother's remarriage constitutes a material change in circumstances that affects the welfare of the child.

[¶29] We are mindful of the standard of review which requires us to accord great deference to the district court on a finding of material change in circumstances, and of the requirement to afford the prevailing party every favorable inference, and we recognize this is a close case and a difficult call for the district court. However, we cannot find that the factors relied on by the district court, alone or in combination, amount to a material change in circumstances that affects GK's welfare.

8

[¶30] In the context of custody disputes, we have asserted that "stability in a child's environment is of utmost importance to the child's well-being." *Reavis*, 955 P.2d at 432. In a number of cases, we determined that a lack of stability in the custodial parent's life constitutes a material change of circumstances warranting the reopening of an existing custody order. *BB v. RSR*, 2007 WY 4, ¶ 17, 149 P.3d 727, 734 (Wyo. 2007); *Gray v. Pavey*, 2007 WY 84, ¶ 13, 158 P.3d 667, 669 (Wyo. 2007); *Jackson*, 2004 WY 99, ¶ 12, 96 P.3d at 26; *Cobb*, 2 P.3d at 580; *Wilcox-Elliott v. Wilcox*, 924 P.2d 419, 421 (Wyo. 1996), *overruled on other grounds by Clark v. Alexander*, 953 P.2d 145 (Wyo. 1998); *Thompson v. Thompson*, 824 P.2d 557, 559 (Wyo. 1992). However, in each of these cases, the instability of the custodial parent was coupled with a marked increase of stability in the non-custodial parent. *BB*, 2007 WY 4, ¶ 17, 149 P.3d at 734; *Gray*, 2007 WY 84, ¶ 13, 158 P.3d at 669; *Jackson*, 2004 WY 99, ¶ 11, 96 P.3d at 25; *Cobb*, 2 P.3d at 580; *Wilcox-Elliott*, 924 P.2d at 421; *Thompson*, 824 P.2d at 559. In such cases there was a material change in circumstances positively affecting the welfare of the child because one parent had significantly increased his or her ability to care for the child, while the other parent's abilities had either remained stagnant or decreased since entry of the original custody order. *Id.* However, we have cautioned:

> It is not in the best interests of children to alter custody arrangements frequently and it is imperative that district courts be satisfied that such changes in the parents' relative circumstances be of such a nature that they will continue over time and not result in continual "back and forth" modifications of custody depending on which parent happens to be doing better at the time a petition to modify is filed. This consideration is especially important in situations where no emergency exists and the charges relate to one parent's improvement in comparison to the other "maintaining." . . . . Changes in primary custody . . . are not good for the child and ought to be discouraged in the absence of some reasonably compelling story.

*Jackson*, 2004 WY 99, ¶ 11 n.2, 96 P.3d at 25 n.2.

[¶31] "A determination that circumstances have materially changed is governed . . . by an evaluation of the current circumstances of the parties in relation to their circumstances at the time the prior custody order was entered." *In re TLJ*, 2006 WY 28, ¶ 10, 129 P.3d at 877. Father does not have stable employment and has not had such employment for many years. As a result, his income varies considerably and he receives government assistance when he is unable to make ends meet. While Father maintains a residence in Lingle, he spends a considerable amount of time working his family's farm in Bayard, Nebraska. Father identifies his residence as being "in Lingle, Wyoming, and near

Bayard, Nebraska." Father also suffers from significant episodes of depression which has, at times, affected GK.

[¶32] The evidence presented at the modification hearing demonstrates that the relative abilities of the parties to parent GK have not changed appreciably. There was no showing that Father's stability has markedly increased since entry of the original custody order, and in fact, many of the examples of Mother's instability which concerned the district court were equally present in Father. This is not a situation in which Father has surged far ahead of Mother in his personal development and ability to serve as a parent. *See Thompson*, 824 P.2d at 559 (finding that the existing custody order should be modified because a material change in circumstances had occurred due to mother's progress in her personal development and ability to serve as a parent). Because the relative abilities of the parties to parent GK have not materially changed, we find that the district court abused its discretion when it determined that the changes in Mother's life created a material change in circumstances warranting the reopening of the existing custody order.

## *CONCLUSION*

[¶33] The district court "does not have the discretion to reopen a custody order simply because, looking at the best interests of the child, it believes it can make a better decision than was made in the prior custody order." *In re TLJ*, 2006 WY 28, ¶ 9, 129 P.3d at 877. The district court abused its discretion when it determined that a material change of circumstances had occurred.[8] Reversed.

---

[8] We defer to the district court to effect the smoothest possible transition back to Mother's primary custody, which would include a determination of the best timing for GK to change schools, such as the end of the semester.

10

**BURKE, Chief Justice**, dissenting, with whom **DAVIS, Justice,** joins.

[¶34] I respectfully dissent. The evidence when viewed in the light most favorable to Father establishes that at the time of the divorce, Mother lived in Lingle and was employed in a job that she had held for many years. She had medical insurance that provided coverage for GK. There was no indication that Mother would be fired from that job for misconduct. She was required to consult with Father regarding all major decisions involving the general welfare of the child. She was specifically required to discuss schools the minor child would attend and was obligated to advise Father prior to any move from Lingle.

[¶35] Since the divorce, Mother was fired from her longtime job at Wyrulec for stealing from a co-worker. She was convicted of that crime by a jury who apparently did not believe her version of events. She remains unemployed and her child support obligation is now calculated as if she is a minimum wage earner. She no longer has healthcare coverage for her daughter. Mother moved from Lingle to Denver and enrolled the minor child in school in Denver without telling Father, all in violation of her duties as the custodial parent under the terms of the decree.

[¶36] After the district court awarded temporary custody to Father, Mother moved back to Lingle on the advice of counsel and enrolled as a full-time student at Eastern Wyoming College. Within a month, she dropped out and returned to Denver to live with her boyfriend. She married her boyfriend four days prior to trial.

[¶37] In determining that there was a material change in circumstances, the district court concluded, "The Plaintiff's conviction for larceny, her loss of employment, her relationship with Mr. Milner, her recent marriage and her move to and from and to Denver, add up to a material change in circumstances." The district court also found that Mother's actions demonstrated "a lack of judgment and personal stability" and that Father "appears to have better judgment and stability." All of the district court's factual determinations are supported by the evidence.

[¶38] In conducting its analysis, the majority finds that each separate piece of evidence does not constitute a change of circumstances. For example, the majority concludes that Mother's conviction "alone, is not enough to demonstrate that a material change in circumstances occurred affecting the welfare of the child." Similarly, the majority takes an individualized approach to Mother's loss of employment, her recent marriage, her relationship with other men, and the relocation to Denver. The majority, however, never questions the district court's conclusion that those factors when combined indicate "a lack of judgment and personal stability" on behalf of Mother.

[¶39] In conducting our appellate review, we are not supposed to reweigh the evidence. But, that is what the majority has done. Instead of granting all favorable evidentiary

11

inferences to Father, as we are required to do, the majority gives Mother the benefit of the doubt. The majority discounts or ignores Mother's failure to provide notice to Father of her move to Denver and the enrollment of GK in a Denver school. The majority treats the marriage to Mr. Kato as a sign of financial stability (they will "pool their financial resources") without mentioning that the marriage was only four days old at the time of the custody hearing. The majority treats Mother's conviction merely as a "misdemeanor" rather than "larceny, a crime involving dishonesty" as did the district court.

[¶40] Additionally, the precedent relied upon by the majority must be placed in context. Properly viewed, that precedent supports affirmance of the district court's decision. In nearly every custody modification case cited by the majority, we applied our standard of review, found no abuse of discretion, and deferred to the district court's decision. In the two cases where we did not defer, we reversed the district court's finding that no material change in circumstances had occurred and remanded for a determination that was in the best interest of the children. *Arnott*, 293 P.3d 440; *JRS*, 90 P.3d 718.

[¶41] It is not enough to simply state the applicable standard of review. We must apply it. The majority recognizes that in determining whether a material change in circumstances has occurred we must give "great deference" to the district court. Here, the majority fails to give any deference, let alone great deference. In this case, the district court could reasonably conclude that a material change in circumstances had occurred. Our standard of review requires us to defer to the district court. I would affirm the decision to modify custody.

**DAVIS, Justice**, dissenting, with whom **BURKE, Chief Justice,** joins.

[¶42] I must respectfully dissent. The majority finds that the district court abused its discretion in finding that there was a material change of circumstances. In my opinion, this conclusion is incorrect for two reasons. First, Appellant conceded below that her move to the Denver area did constitute a material change of circumstances, and she never attempted to withdraw that concession. Second, when the appropriate standard of review is applied, with the required deference to the district court's discretion, the decision should be affirmed in any event.

[¶43] In her response to Appellee's motion for a temporary order, Appellant conceded that "Plaintiff [Appellant] would state that moving the minor child is a materiel [sic] change in circumstances but would affirmatively state that this relocation is in the best interest of the parties' minor child." Counsel for Appellant repeated this concession at the hearing on Appellant's motion for the temporary order, indicating that:

> It's kind of an interesting area because I think a material change in circumstances always occurs when you move. That's always been kind of my take on that. But really what matters is what's in the best interest of the child.

[¶44] At the hearing on the merits of the motion for a change of custody,[9] Appellee's counsel twice reminded the court that Appellant had already conceded that there was a material change of circumstances. Appellant's counsel did mention that Appellee had to prove both a substantial change of circumstances and that a change was in GK's best interests. She also distinguished the facts from those in *Arnott v. Arnott*, 2012 WY 167, 293 P.3d 440 (Wyo. 2012), where a parent moved to Virginia. However, she did not ask the court to relieve her client of the earlier admission after Appellee's counsel referred to it, and her argument appears to be directed to GK's best interests, consistent with her client's earlier concession. The guardian ad litem, whose job it was to act in GK's best interest, after investigating the facts of the case and participating in the hearing, stated as follows:

> I agree with [Appellee's counsel] that a substantial change [of circumstances] has occurred in this case. I agree with [Appellant's counsel at the time] that this case is different than the Arnott case. But, nonetheless, we are

---

[9] The district judge should be commended for the alacrity with which he addressed a situation that was potentially harmful to GK. He held a hearing on the motion for a temporary order thirteen days after it was filed and ruled from the bench, temporarily changing custody. He held the hearing on the merits less than five months after the original petition for modification was filed, and he issued a thorough decision letter less than a month later, at a time when the child could have transferred to another school if Appellant had prevailed.

before the Court where mom has moved to Denver, which would relocate G. to a new school, a new home environment, a new home with Mr. Kato in it, and so I do think there has been a substantial change in circumstances. What is really in the forefront of my mind is what's in G.'s best interest.

[¶45] Under the circumstances, it is hardly surprising that the district judge disposed of the material change of circumstances issue with a single sentence, finding that:

The Plaintiff's conviction for larceny, her loss of employment, her relationship with Mr. Milner, her recent marriage and her move to and from and to Denver, add up to a material change in circumstances.

There was no need for further analysis. Appellant had conceded that the effects of the move to Denver alone were sufficient to confer jurisdiction to consider modification.

[¶46] That there was a material change of circumstances should be considered established by a judicial admission. We have recently discussed the elements of a judicial admission:

A judicial admission is an express waiver made in court by a party or his attorney conceding the truth of an alleged fact. *Kohne v. Yost*, 250 Mont. 109, 818 P.2d 360, 362 (1991). Under the right circumstances, an admission made by an attorney can be binding upon his client and constitute the basis for a verdict. *Childs v. Franco*, 563 F.Supp. 290, 292 (E.D. Pa. 1983); *Larson v. A.T.S.I.*, 859 P.2d 273, 275 (Colo. Ct. App. 1993); *see also World Mart, Inc. v. Ditsch*, 855 P.2d 1228, 1237 (Wyo. 1993). Such an admission can be made in closing argument. *Childs*, 563 F.Supp. at 292; *World Mart, Inc.*, 855 P.2d at 1237; *Kohne*, 818 P.2d at 362.

In order to be considered an admission, the attorney's statement must be unequivocal. *Childs*, 563 F.Supp. at 292; *Baxter v. Gannaway*, 113 N.M. 45, 822 P.2d 1128, 1133 (Ct. App.), *cert. denied*, 113 N.M. 16, 820 P.2d 1330 (1991). An admission is a declaration relating to factual matters; a statement of personal opinion is not an admission. *Baxter*, 822 P.2d at 1133; *Larson*, 859 P.2d at 276. In determining whether a statement made by counsel is an admission, we must consider the circumstances of the case and the context

14

of the statements. *Baxter*, 822 P.2d at 1133; *Kohne*, 818 P.2d at 362. If ambiguity or doubt exists as to whether or not the attorney's statement was an admission, we presume that the attorney did not intend to make a judicial admission during his argument. *Baxter*, 822 P.2d at 1133.

*Big-D Signature Corp. v. Sterrett Properties, LLC*, 2012 WY 138, ¶ 29, 288 P.3d 72, 79-80 (Wyo. 2012) (quoting *Francis v. Pountney*, 972 P.2d 143, 147 (Wyo. 1999)).

[¶47] The statement in Appellant's response to the motion for a temporary order was unequivocal, and it was reinforced by the statement made in closing argument at the temporary order hearing. No effort was made to withdraw it, and Appellee evidently relied on it in putting on his case. The brevity of the district court's finding on this issue suggests that it relied upon it as well.

[¶48] In addition, if the district court could be said to have erred, that error was invited by Appellant's concession that the move to the Denver area alone was a material change of circumstances. *Platt v. Platt*, 2011 WY 155, ¶ 221 264 P.3d 804, 811 (Wyo. 2011) (citing *TF v. Dep't of Family Servs.*, 2005 WY 118, ¶ 27, 120 P.3d 992, 1002 (Wyo. 2005); *Robbins v. Robbins,* 2002 WY 80, ¶ 10, 46 P.3d 880, 883 (Wyo. 2002)). The district judge spared no effort to address the issues the parties raised; he held appropriate hearings and issued a thorough decision, and would undoubtedly have addressed the material change question in more detail if it had truly been an issue.

[¶49] Moreover, when one considers all the evidence in the record, the district judge did not abuse his discretion. I digress briefly to point out that we expect a great deal of district judges in custody cases. In most of these disputes, as in this one, both families are drawn into the fray. In fact, here two of the parties' adult daughters sided with and testified consistently with Appellee, and one sided with and testified consistently with Appellant. This pattern continued with teachers, friends, and Appellant's twin sister. We expect judges to peer into this kind of miasma and determine much more than what the facts are and which of them are important. We also expect them to determine whether a parent will in the future do the things necessary to provide for a child and work with the other parent and extended family so that they can all maintain meaningful relationships.

[¶50] It would be an obtuse party who would come to court and not promise cooperation with the other parent and willingness and ability to do whatever it takes to see that a child is well-cared-for. That is the reality of these situations. Sometimes the only means by which a judge can determine whether a parent is sincere is by weighing past behavior and seeing and hearing the party testify. The majority did not have the benefit of the latter, and instead reweighs the evidence contained in a cold record.

[¶51] All agree on the standard of review. We review custody issues, including whether there has been a material change in circumstances, for an abuse of discretion. *Arnott*, ¶ 11, 293 P.3d at 444. We view the evidence in the light most favorable to the district court's determination, affording the prevailing party every favorable inference and omitting from our consideration conflicting evidence. *Willis v. Davis*, 2013 WY 44, ¶ 5, 299 P.3d 88, 91 (Wyo. 2013). An abuse of discretion occurs only if the district court could not reasonably conclude as it did, or if there has been a procedural error. *In re TLJ*, 2006 WY 28, ¶ 6, 129 P.3d 874, 876 (Wyo. 2006).

[¶52] The district court's decision as to GK's best interests is not challenged by Appellant or evaluated by the majority. If we do not consider a material change of circumstances to have been judicially admitted, as I think we should, there was ample evidence to support the decision and under our controlling standard of review the district court did not abuse it discretion.

- Appellant was convicted by a jury of her peers of petty larceny for stealing a cellular phone and consequently lost her job. The question is not whether GK might know or later learn of this – it is whether a parent who steals a phone and loses her job over it is stable enough to care for a young child. This factor alone is probably not sufficient to be a material change of circumstances, but it is worthy of consideration.

- The parties' decree of divorce required Appellant to notify Appellee of her planned move to Denver fifteen days before moving. She did not do so. The district court could reasonably have inferred that she did so to present it with a *fait accompli*, then argue that, as GK had started school, it would be disruptive to return her to Wyoming. This would not bode well for future cooperation with Appellee.

- At one point, Appellant moved back to Lingle on the advice of her first attorney, evidently in an effort to influence the outcome of the custody case, and then abandoned that course of action when she realized "this wasn't our plan."

- We recognized in *Arnott* that a move may be a substantial change of circumstances. 2012 WY 167 at ¶ 40, 293 P.3d at 458. The evidence in this case is certainly in conflict, but viewed in the light most favorable to Appellee as it should be, disregarding the evidence presented by Appellant, it indicates the following:

  o GK attends a school with a small class, and her teachers are able to give her the individual attention a child with her impressive intellect needs. It is undisputed that she has excelled in this environment.

16

o Although GK is a very bright girl who may certainly excel in an urban school in the Denver area, there was no way for the district judge to test that possibility. On the other hand, the Lingle school system is a proven commodity.

o The child has a circle of friends with whom she enjoys spending time.

o The parents of GK's friends and Appellee help each other by picking children up from school, watching them on occasion, etc. She thus has a good extended support system in Lingle.

o Both parties have relatives in the Lingle and Bayard, Nebraska area. Appellant's sister works at GK's school, where she can keep an eye on her.

o Appellee provides GK with good care, and has been significantly involved with her school.

[¶53] A move which requires a child to move to an urban area more than commuting distance from where she has lived, places her in a home with a new surrogate parent (her stepfather), requires her to attend a different school, and removes her from her circle of friends and support network does affect that child. It is a material change of circumstances if the proper standard of review is applied.

[¶54] The real question, as both parties and the guardian ad litem recognized until this appeal, was whether it is in GK's best interest to be in the custody of her mother or father, both of whom are good parents. Even though there is a material change of circumstances, the move might still be in GK's best interest for the reasons Appellant argued below. Whether it is or is not is a close and difficult question, and judges (perhaps including this one) could reasonably arrive at diametrically opposed conclusions and not abuse their discretion on these facts **regardless of which choice was made**.

[¶55] I do not believe the issue of whether there was a material change of circumstances is close, however, and I would conclude that the district court acted well within its discretion in finding as it did when the evidence is viewed in the light most favorable to the Appellee. I would therefore affirm.